JETTON & FARRIS VS. SMEAD.

1. EVIDENCE: *Writ and return in replevin to identify the property.*
  If the plaintiff, in an action of replevin, desires to prove that the prop-erty in controversy was taken from the possession of the defendant and delivered to him by the officer, he should introduce the order of delivery as well as the return, where the latter does not, of itself, identify the property.

2. — *The defendant's bond insufficient to prove redelivery, etc.*
  The bond executed by the defendant is insufficient, of itself, to prove the redelivery to him of the property.

3. PLEADING: *Matter in abatement.*
  A plea that the plaintiff was *non compos mentis*, etc., presents matter in

Jetton & Farris vs. Smead.

abatement only; in such a case, if the plaintiff has no guardian, he should sue by his next friend.

4. PRACTICE: *When plea in abatement properly stricken out.*

Where such a plea was not filed until after several continuances and the beginning of the trial, it was properly stricken out.

5. — *When an answer should be allowed after the trial is begun.*

When the circumstances show that the parties went into trial under a mutually erroneous impression that the defendant's answer was in, and he, upon discovering its absence, filed a substituted answer, it would have been a sound and just exercise of the discretion of the court below to have permitted the substituted answer to remain on file; and in case of surprise, to have given the plaintiffs further time in which to prepare to meet the defense interposed.

6. — *Upon striking out the answer.*

Where, in an action of replevin, the answer is stricken from the files, judgment by default should be entered against the defendant, and an inquest of damages taken.

7. EVIDENCE: *Inquest after default in replevin.*

On an inquest after default in replevin, the value of the property would have to be proven in order that an alternative judgment might be rendered, also the damages sustained by the detention of the property. And the defendant could introduce mitigating evidence, but none to defeat the action.

8. REPLEVIN: *Judgment in.*

The judgment in an action of replevin should be in the alternative for the property or its value, as ascertained by the jury, if delivery cannot be had.

APPEAL from *Union* Circuit Court.

Hon. MYRON D. KENT, Circuit Judge.

*J. H. Carlton,* for appellant.

*U. M. Rose, contra.*

ENGLISH, C. J.   This was a code action for the recovery of specific personal property.   The only thing answering to a complaint in the transcript before us seems to have been intended to serve the double purpose of a complaint and an affi-

davit to obtain an order for the delivery of the property.    It is as follows:

After the names of the parties, etc., "The plaintiff, H. P. Smead, states that the cotton claimed by him in this action is six bales, five of which are marked H., and numbered 7, 8, 9, 10 and 11, and three others marked B. No. 11, all of which is bound in iron ties, and is worth three hundred dollars, and for the detention of said cotton, he believes he ought to recover one hundred dollars; that he is the owner of the cotton, and is entitled to the immediate possession of it; that the cotton is wrongfully detained by the defendants, Jetton & Farris, and was not taken for tax or fine against the plaintiff, or under an order or judgment of a court against him, or under an execution or attachment against his property, and that his cause of action herein accrued within one year past." See Gantt's Dig., ch. 115.

It was sworn to and filed in the office of the clerk of the Union circuit court, March 29, 1871.

No writ appears in the transcript.

On the 27th of September, 1871, there is an entry that the parties appeared, and, on motion of the defendants, further time was given them in which to file their answer to the complaint.

October 3, 1871, the cause was continued by consent.

April term 1872, a like order of continuance without prejudice; March 27, 1873, the cause by consent was set for "disposition" on the 1st of April, and on that day it was continued by consent.

September 19, 1873, the parties appeared by their attorneys, and both parties announcing themselves ready for trial, a jury was called and sworn, "Well and truly to try the case of H. P. Smead against Jetton & Farris, and a true verdict render according to law and evidence, unless discharged by the court or withdrawn by the parties."

After the jurors were sworn, it was discovered that one of them was disqualified, and the parties agreed that he might be discharged and the cause tried by the eleven remaining jurors.

Plaintiff then introduced witnesses by whom he proved that the cotton in dispute was produced, ginned, baled and weighed on his farm, of the crop of 1870; that it was his property, the probable value of such cotton; and that it was taken from his farm on the 21st of March, 1871, without his permission, by defendant Jetton.

Plaintiff next proposed to read in evidence " the return of the officer who executed the writ of replevin in the case," to which the defendants objected; but the court overruled the objection and the same was read as follows:

"SHERIFF'S OFFICE, *Union County—March,* 24, 1871. I hereby deputize and empower H. V. Sims, constable of Van Buren township, Union county, Ark., as special deputy to serve the within writ, this March 24th, 1874. (Signed) LEE CLOW, *Sheriff,* etc.

" Whereas, I have this 25th day of March, 1871, duly executed this writ by taking possession of the within mentioned property and delivered the same to the possession of the said H. P. Smead, he executing a bond according to law in the sum of $600 which has been approved by me. (Signed) LEE CLOW, *Sheriff.* By J. G. CHAPIN, *Deputy.* By H. V. SIMS, *Special.*"

It does not appear that the writ was read in evidence, nor does it appear in the transcript.

Plaintiff was then permitted to read in evidence, against the objection of defendants, what is termed, in the bill of exceptions, a bond executed by defendants to retain the cotton in this case.

It is in code form: " We undertake and are bound to the plaintiff, H. P. Smead, in the sum of six hundred dollars, that

defendants, Jetton & Farris, etc., shall perform the judgment of the court in this action."

It purports to be signed by the defendants and three other persons; and to have been approved by the sheriff, March 30, 1871.

Whether, upon the execution of this bond, the cotton was redelivered to the defendants, was not shown by the plaintiff. Here the plaintiff closed his case.

Defendants then proposed to read in evidence a mortgage purporting to have been made to them by plaintiff, and called defendant Farris as a witness to prove the signature of the plaintiff; to which the plaintiff objected on the ground that there was an attesting witness of its execution, and the court sustained the objection.

Here the court adjourned until the next morning (September 20, 1873).

The counsel for defendants seems to have discovered during the adjournment that the defendants had no answer to the complaint on file, and on the next morning when the court met, filed an answer which purports to be a substitute for one previously filed with an amendment, etc.

There are two paragraphs of what purports to be substituted, in substance as follows:

1. Defendants for answer say, as they did in their original answer, that they do not unlawfully detain the cotton nor did they at the institution of the suit.

2. And for further answer they state, as in their original answer, that they do not detain the cotton of plaintiff unlawfully, but aver that on the 24th of April, 1874, plaintiff was indebted to them in the sum of $590, and wanting further supplies for that year in goods, wares and merchandise, executed to them an instrument by which he bargained and pledged his entire crop of cotton raised in Union county in the

year 1870, and on default of payment, authorized defendants to take possession of the cotton and sell the same at auction or privately. That plaintiff got of defendants, under said contract, other supplies, etc., amounting to $264.12, as would appear by bill of particulars A, marked filed in this case March 29, 1871, but filed, as defendants believe, March 29, 1872, with original answer which is lost or mislaid and not in the papers. That they took possession of said cotton under and by virtue of said instrument, as well they might, because plaintiff wholly failed to pay for said goods, wares and supplies as agreed in said contract; and defendants held and sold said cotton under said authority and make account of sales in exhibit, etc.

To the above paragraph of the answer was attached the affidavit of Farris, that the facts set forth were true, and that the answer would have been presented sooner, but he verily believed that said original answer was in, and was not advised to the contrary until the same could not be found, since the commencement of the trial.

3. And for further answer, defendants state that plaintiff was, at the institution of this suit, has since been and now is, *non compos mentis*, and had not at the institution of this suit, nor has he since had, any lawful curator or guardian.

This additional paragraph was also verified by the affidavit of Farris.

The plaintiff moved to strike the answer from the files, on the grounds:

1. That it was filed out of time, etc.

2. That it did not state "whether the sums stated therein were paid before they seized the cotton."

3. Because the paper filed as an answer contradicted the record, in stating that defendants had previously filed an answer, when the record showed no such filing.

The court struck out the answer and exhibits, and defend-

ants excepted. Defendants then moved to strike plaintiff's complaint from the files, which was overruled. Defendants produced the mortgage referred to in the answer, and after proving its execution by Phillips, the attesting witness, offered it in evidence, and also proposed to prove that the debts secured by the mortgage were not paid by plaintiff, as agreed before the taking of the cotton, and that they took possession of the cotton under the mortgage and sold it to pay the debts thereby secured, etc.

To the introduction of all of which evidence, the plaintiff objected, because the defendants had no answer on file, and could only contest the damages.

Defendants insisted that they could introduce the evidence to lessen the damages, by showing that the cotton was sold under the mortgage and applied to the payment of plaintiff's debts secured thereby, but the court ruled out the evidence.

Defendants then proposed to prove that the cotton in dispute was sold by them in New Orleans for but $253, and the proceeds applied to the credit of plaintiff, all in accordance with previous agreement, etc., which the court ruled out on the grounds that defendants had no answer in.

No further evidence being offered or introduced by the parties, the court, on motion of the plaintiff, and against the objection of defendants, instructed the jury :

" That if they believed from the evidence that the property in question was at the time of suing out the writ herein, the property of the plaintiff, they will find for the plaintiff the value of the same, as they may believe the same was shown by the evidence; and that they also find whether the defendants took the property and appropriated the same to their own use, by giving a bond for the same."

The jury returned the following verdict :

" We, the jury, find the cotton in controversy to be the

property of the plaintiff; that it is of the value of $246.60, and that defendants converted the same their own use."

The court rendered a judgment in favor of plaintiff against defendants for $246.60 and costs.

The defendants filed a motion to set aside the verdict and for a new trial, on the grounds:

1. The court erred in striking from the files the substituted answer filed by them.

2. In refusing to permit them to introduce as evidence the mortgage, etc.

3. In refusing to permit them to prove that the cotton was sold and the proceeds applied to a debt due by plaintiff to them, in accordance with an agreement between them and plaintiff.

4. In giving the instruction asked by plaintiff.

5. Verdict contrary to law and without evidence.

The motion was overruled, and the defendants took a bill of exceptions, setting out the facts above stated and appealed to this court.

1. The complaint, if it may be so named, is a sorry specimen of pleading, even under the code system.

Instead of concluding with a prayer for judgment, or as expressed in the code, "a demand of the relief to which the plaintiff considers himself entitled" (Gantt's Dig., sec. 4562), it concludes with allegations which should have been made in a separate affidavit for the purpose of obtaining an order for the delivery of the property sued for. Gantt's Dig., ch. 115.

The action, however, as indicated in the complaint, was for the recovery of the possession of specific personal property and damages for its detention, and a substitute, under the code practice, for the former action of replevin in the detinet. It was not an action like trover or trespass, for damages for the conversion of the cotton.

2. If it was material for the appellee to prove that the cotton was taken from the possession of the appellants by the the sheriff, and delivered to him, the writ or order for the delivery of the property, as it is called in the code, as well as the return of the sheriff thereon, should have been read in evidence, for the return, read in evidence on the trial, did not of itself identify the cotton, but referred to the " within mentioned property," etc., meaning, it may be supposed, the property described in the process on which the return was made.

3. If it was material for the appellee to show that the cotton was redelivered to appellants, upon their executing bond, etc., the bond read in evidence did not, of itself, prove that fact.

Properly the bond should have been made part of the return of the sheriff, with a statement that, upon its execution, the property was restored to the appellants.   Gantt's Dig., sec. 5042, etc.

4. When appellee closed his case on the trial, he had proved his title to the cotton, its probable value, and that one of the appellants, Jetton, had, before suit, taken it from his farm; but he had not proven that the other appellant was connected with the taking, or unlawfully detained the possession of the cotton at the time the suit was commenced against him.   The complaint alleged the unlawful detention of the cotton by both of the defendants, and had the answer been in, disputing this allegation, the appellee could have recovered, on the evidence introduced by him, against one of them only.

5. The first and second paragraphs of the answer filed by the appellants, and which the court struck from the files, were in bar, but the third paragraph related to the disability of the appellee, and was matter in abatement, if a defense at all.

It alleged that the appellee was, at the institution of the suit, etc., *non compos mentis*, and had no guardian, etc.

"The action of a person judicially found to be of unsound mind must be brought by his guardian, or, if he has none, by his next friend," etc. Gantt's Dig., sec. 4486.

It is not alleged in the paragraph that appellee had been judicially found to be insane before suit. If the appellee was, in fact, insane before suit, he should properly have sued by his next friend, though no inquest had been held before the proper court; but it is not certain that his failure to do so would be cause for abating the suit. 2 Saund. on Pl. and Ev., 318; 1 Chitty Pl., 18; 3 Rob. Pr., 240; 19 Wend., 650.

Be this as it may, the appellants did not pretend that this defense was set up in their former answer, and filed as it was after several continuances, and after the trial had commenced, it was properly stricken out by the court.

The first and second paragraphs, with the mortgage, etc., exhibited with the answer, set up a probable meritorious defense to the action.

There can be but little doubt, from all the facts· disclosed by the record, that both parties went into the trial under the impression that an answer was in, or that the cause was in some way at issue. The cause had been several times continued by consent. Both parties announced themselves ready for trial, a jury was sworn, as if to try a cause and not to make an inquest of damages, one of the jurors was discharged by consent, and it was agreed that the eleven others should try the case; no default had been taken against appellants for want of an answer; the appellee introduced his evidence to sustain the allegations of the complaint as if they were at issue; when the appellants first offered to prove the execution of their mortgage, no objection was made on the ground that they had no answer in, but it was insisted that an attesting witness should be called. In this attitude of the case, the court adjourned on the first day of the trial. On the next

morning the substituted answer, as it is called, was filed, accompanied by the affidavit of one of the appellants that he verily believed that an answer of like import was in, and was not advised to the contrary until after the trial had commenced, etc.   True, there is no record entry showing that an answer had been previously filed; but this may have been an omission of the clerk, or it may be that the counsel for appellants supposed he had filed the answer, when, in point of fact, he had not, the case having been pending for several years, and repeatedly continued by consent.   If the counsel for appellee knew that no answer had been filed before he consented to go into a trial, he should have asked for a judgment by default and an inquest.   Gantt's Dig., sec. 4212.

Under all the circumstances thus appearing, it would have been but the exercise of a sound and just discretion of the court to have permitted the answer, except the third paragraph, to remain on file.   Then, if the appellee had shown that he had gone into trial knowing that there was, in fact, no answer on file, and that he was surprised by the matters of defense set up in the answer, and not prepared to meet them, the court should have given him such further time as might have seemed reasonable, even if the jury had to be discharged.

But the court having thought proper to strike out the answer, the after progress of the trial was a farce.   On striking out the answer, a default should have been entered against the appellants for failure to answer, and an inquest taken.

The default would have admitted the right of action in the appellee, that he was the owner of the cotton and entitled to its possession, and that defendants wrongfully detained it. On the inquest appellee would have to prove the value of the cotton, that he might take an alternative judgment for its value, in case its delivery could not be had (Gantt's Dig., secs. 4682–4718), and such damages as he had sustained by its de

tention; and appellants could introduce mitigating evidence, but none that would defeat the action. *Hunt et al. v. Burton,* 18 Ark., 188.

6. But treating the trial as a mere inquest, without the formal entry of a default, though the verdict was not in proper form, it found the value of the cotton, and the judgment was for its value, as in a suit like trover, for its conversion, which was not the gist of the action in this case, as made by the complaint.

The action was for the recovery of the property and damages for its detention, and the judgment should have been for the property on the verdict, or for its value, as ascertained by the jury, if its delivery could not be had. Gantt's Dig., sec. 4718. For anything appearing to the contrary, by the evidence introduced on the part of the appellee, the appellants might have been in possession of the cotton when the verdict and judgment were rendered, and they had the right to satisfy the judgment by restoring it to the appellee, no damages being assessed for its detention.

It is true appellants offered to prove that they took possession of the cotton and sold it, and applied the proceeds to the payment of a debt due them from the appellee, but all this evidence was excluded by the court, and neither the verdict nor the judgment could properly be based on excluded evidence. Upon the whole record, we think the judgment should be reversed, and the cause remanded with instructions to the court to permit the appellants to refile their answer, except the third paragraph, and for a new trial.