Cox v. Gress.

---

## COX v. GRESS.

1. INSANE PERSONS: *Proceedings against.*
   The statute regulating proceedings against insane persons, (Mans. Dig., secs. 4960, 4964), adopts substantially the former practice in equity and makes it applicable to all civil cases. It is, therefore, the duty of the court in every action to which an insane person is defendant, to see that he is represented on the record by a competent guardian; and until there is such representation it is error to proceed.

2. CIRCUIT COURTS: *Proceedings before special judge at chambers.*
   While the regular judge is occupying the bench, a special judge is without

judicial power to proceed with the trial of an action at chambers or to appoint a guardian *ad litem* therein. Such proceedings will not be cured by a *nunc pro tunc* order, made afterwards in court by the special judge, entering them of record as of the day on which they were had; nor will the presence of a guardian thus appointed for an insane defendant, estop the latter in a direct proceeding to vacate a judgment entered against him as the result of such trial.

APPEAL from *Pulaski* Circuit Court.

W. G. WHIPPLE, Special Judge.

This was an action for money had and received, brought by Russell B. Gress against George W. McDiarmid. The regular judge being disqualified a special judge was chosen to preside at the trial of the cause. By consent of the plaintiff's attorney and of C. W. Cox, who appeared as attorney for the defendant and also as the attorney for N. W. Cox, claiming to be the guardian of the defendant, a person of unsound mind, the trial proceeded on the 14th day of April, 1887, before the special judge at his office in a building not connected with that in which the court room was situated. The regular judge was at the same time holding a session of the court in the court room, and the trial of another cause was progressing there before him. The answer of N. W. Cox as such guardian was filed before the special judge at his chambers, and the plaintiff moved to strike it out on the ground that Cox's letters of guardianship had been revoked. The motion was sustained. The plaintiff then filed a motion stating that the defendant had since the commencement of the action become of unsound mind, and asking that an attorney *ad litem* be appointed to defend for him. The court sustained the motion and appointed George W. Williams guardian *ad litem* for the defendant. Williams as such guardian filed an answer in which, (after stating that the defendant, McDiarmid, had been for six years a

Vol. LI.—15

person of unsound mind, and was so adjudged by the probate court on the 13th of April, 1887), he denied that the defendant was indebted to the plaintiff in any sum and alleged "that the amount for which plaintiff sues is upon an account, and that the cause of action thereon did not accrue within three years next before the bringing of this suit." The special judge then proceeded to hear the evidence in support of the plaintiff's claim, the plaintiff himself being the only witness examined. There was "no evidence in writing in support of said claim, except the plaintiff's regular books of account, kept in due course of business by his book-keeper, F. S., who had resided in Texas for several years, and in which the transactions concerning plaintiff's claim were duly entered and charged against defendant by said S." The books were proved to be in F. S.'s handwriting. The guardian *ad litem* does not appear to have offered any testimony or made any objection to that offered by the plaintiff. The special judge found for the plaintiff in the sum of $630.00, with interest from July 1, 1883, and that he was entitled to recover that sum. *All these proceedings took place on the 14th day of April, 1887, at the special judge's law office.* On the 15th of April, 1887, the special judge took the bench and the plaintiff asked to have the record show that on April 14, 1887, he filed before the special judge a motion for the appointment of a guardian *ad litem* for the defendant on the ground that he had become insane since the commencement of the suit, and was then a person of unsound mind. The request was granted and the motion was entered accordingly. C. W. Cox thereupon appeared in person and exhibiting letters of guardianship, showing his appointment as guardian of the estate of defendant, (an insane person), made by the probate court on the 15th day

of April, 1887, moved for leave to file the defendant's answer, which he tendered with his motion. In offering to file an answer, C. W. Cox admitted in open court "that he had been attorney for the defendant" from the time a motion was made to set aside a judgment taken by default against the defendant in the same cause and set aside at a previous term. The court refused to permit the answer of C. W. Cox to be filed; and he then offered to call witnesses "and to take their testimony at the bar to support the averments embraced in his said motion," but the court refused to permit him to do so. He saved exceptions to these rulings, denying his motions for leave to answer and produce testimony. "The court then directed the clerk to enter of record the proceedings, trial and judgment heretofore had and rendered in this case on the 14th day of April, 1887, now as for then, which was accordingly done." C. W. Cox also excepted to this entry; he then moved for a new trial, which was denied, and he appealed.

*W. S. McCain* and *C. W. Cox*, for appellant.

The question is, what is the correct practice in a suit against a lunatic whose lunacy has not been judicially ascertained. Mansfield's Digest, secs. 4960, 4966, are not free from ambiguity, but they seem only to apply where lunacy has been judicially determined. Under the Const., art. 7, sec. 34, the probate court would seem to have exclusive jurisdiction in the ascertainment of lunacy. But where the circuit court has jurisdiction and a party becomes insane, it is probable the court could ascertain the fact of lunacy by proper proceedings for itself. For the practice at common law see 4 Coke, 123; Coke Litt., 135, b; Ib., sec. 405; Story Eq., 325, 1365; 5 Pick., 431; 18 Johns., 134;

Newman Pl. and Pr., 556-9; 12 Hun., (N. J.), 381; 7 Rob. Pr., 600-1, and notes.

A lunatic cannot employ an attorney; and the lunacy determines his attorney's authority.    1 Ark., 99; Story Ag., sec. 6; 2 Ark., 412; Story Ag., sec. 481, note 4; 2 Kent. Com., 645.

It was certainly error to appoint a guardian *ad litem* for defendant on the mere suggestion of plaintiff, without any judicial ascertainment of his insanity, and without his presence. 32 Ark., 674; Story Eq., 1365, 1365, a.    Even in chancery the inquisition should be by jury.    Story Eq. Ch., 35-6, secs. 1327, 1365; Story Eq. Pl., secs. 70, 871.

The appointment of the guardian *ad litem* in this cause was invalid because not made *by the court*, but by a special judge off the bench and out of court.    2 Ark., 252; 48 Id., 155; 20 Id., 77; 24 Id., 249; 3 Black. Com., 23; 45 Iowa, 503; 3 Ark., 284; 34 Id., 574.    The so-called trial is also void for the same reasons.    See cases *supra*, and art. 7, sec. 21, Const.    If *consent* could have cured this, there was no one capable of consenting to these proceedings; nor could a *nunc pro tunc* order cure them or make valid the acts of a *mere individual*.

Consent cannot give jurisdiction.    39 Ark., 254; 45 Id., 478; 3 Comst. (N. Y.), 547; 2 Ark., 252.    The trial on April 14 was void, 48 Ark., 227, and the *nunc pro tunc* entry could not cure it.    1 Wall., 627.

This court will reverse where no proper defence was made for an infant, and lunatics stand in the same position as infants.    42 Ark., 222; 24 Ark., 377; Ib., 438; 47 Id., 300; Ib., 445; 39 Id., 235; 8 Peters, 128; 1 Bibb, 203.

In this case the defence was an *empty form* and palpable injustice was done a lunatic.

*E. W. Kimball*, for appellee.

A judgment against an insane person is not void nor voidable, nor can it be reversed for error on account of the insanity; and he may appoint an attorney. Freeman on Judg., sec. 152. The case was tried at chambers by the consent of defendant's attorney, and the agreement was binding. The court had a right to appoint a guardian *ad litem*. Mansfield's Digest, secs. 4963-6; Bliss Code Pleading, Lunatics' Guardians.

Insanity of defendant is no ground for new trial. Freem. Judg., *supra*. He was represented by guardian, who made the only defence that could have been made for him.

The trial was had by consent, by agreement of parties, and they are estopped from objecting now. It is not a jurisdictional question; the special judge was regularly elected; the proceedings were duly entered in open court.

COCKRILL, C. J.

At common law a lunatic could be sued without the intervention of a guardian or committee. If of full age he could appear by attorney as any other defendant. But he was incompetent to employ an attorney, and so the court performed that duty for him. Buswell on Insanity, secs. 128, 132; Freeman on Judgments, sec. 152; *Van Horn v. Mann*, 39 N. J. Law, 213, and cases cited.

In equity, the practice was different. That court would not proceed without the intervention of a guardian to protect the interests of the insane defendant. If he had been judicially ascertained to be insane, his committee or guardian was required to conduct his defence, but if they were hostile in interest to him, or if for any reason it was deemed best for his interest, the court appointed some other person com-

petent to protect his interest as guardian *ad litem*. It was regarded as error to proceed against him without such a guardian. If the insanity of a defendant in a pending suit was suggested, but had not been judicially ascertained, the court gave opportunity for an inquisition to be held, or took the necessary steps to determine the question for itself; and having ascertained that the defendant was mentally incapable of making his defence, it appointed a guardian *ad litem* for him and thereafter imposed upon him the restraints of infancy.

1. INSANE PERSONS: Proceedings against.    Our statute regulating proceedings against lunatics adopts substantially the former practice in equity and makes it applicable to all proceedings. Mansfield's Digest, sec. 4960, *et seq.* It is therefore incumbent upon the court in every civil case where an insane person is defendant, to see to it that he is represented upon the record by a competent guardian and it is error, as in a proceeding against an infant, to proceed without it.

2. CIRCUIT COURTS: Proceedings before special judge at chambers.    For the application of the practice to this case, we may concede, as the appellee contends, that a trial had by consent before a special judge at his chambers, while the regular judge is upon the bench, may be the foundation for a subsequent valid judgment, when the special judge assumes the functions of his office in court. But no such trial could be forced upon an unwilling party, and nothing less than consent to the proceeding at chambers could justify the judgment. *Butler v. Williams*, 48 Ark., 227.

Did the defendant consent in this case?

When the authority of his supposed guardian was rejected by the judge at chambers, the defendant stood as though he had never been represented in the cause by him. If he was not in fact the guardian and was not authorized to appear

Cox v. Gress.

for the defendant, as the judge found, then he had not the authority to waive the defendant's rights.  If we treat his action as void *ab initio* for one purpose, we must do so for all.  We cannot look then, to his consent to estop the defendant.  The judge ascertained upon proof what the plaintiff had previously suggested, that the defendant was insane.  He was, therefore, incapable of giving consent.  The silent acquiescence in the subsequent proceedings of the person designated by the judge at chambers as guardian *ad litem*, cannot be held to estop the defendant in a direct proceeding to vacate the judgment; nor did the *nunc pro tunc* order made in the court on the next day as of the date of the trial at chambers, add anything to the effectiveness of the trial. Such an order is effective only when it records a previously omitted truth—it does not create, but only speaks what has been done.  When it causes the record to speak a palpable untruth, it is as worthless as any other exposed error.  There had been no judicial action until the time of the entry of judgment, and it was not competent for the court to cut off the defendant's right to make his defence by guardian, by a retroacting order reciting that certain things had been previously done which had in fact no judicial existence until the order was made,  When, therefore, the defendant was legally declared a lunatic and a guardian appointed to defend his interest, the evidence had been heard, the trial had and the cause practically determined.  That was erroneous.

In an unreported case against an infant, at a previous term, we adjudged it to be error to take proof in a cause by deposition before the appointment of a guardian *ad litem*.  We have frequently ruled that the appointment of such a guardian is to serve a practical and useful purpose, and not to fill an

empty form. The latter is all that can be said to have been done in this case.

Reverse the judgment and remand the cause for further proceedings.