## PETERS v. TOWNSEND.

### Opinion delivered January 3, 1910.

1. INSANITY—JURISDICTION OF COURTS.—Section 34, art. 7, of Const. 1874, providing that probate courts shall have "exclusive original jurisdiction in matters relative to * * * persons of unsound mind and their estate," does not exclude the jurisdiction of other courts to hear and determine suits by or against insane persons, whether under guardianship or not, and whether they have been adjudged insane by the probate court or not. (Page 106.)

2. SAME—PROCEDURE IN SUITS BY OR AGAINST INSANE PERSONS.—The statute requiring that actions by an insane person shall be prosecuted

by a guardian or next friend and that actions against him must be defended either by a regular guardian or by one appointed by the court (Kirby's Digest, § § 6026-9) is intended to protect all persons of unsound mind, whether judicially declared to be such or not. (Page 106.)

3. SAME—JURISDICTION OF CIRCUIT COURT.—The power of the circuit court to hear and determine an action against an insane person involves the power to inquire into the mental condition of the defendant, so as to protect his interest in the litigation, but the inquiry is only for the purpose of that particular case, and extends no further. ·(Page 107.)

4. SAME—RELIEF AGAINST JUDGMENT.—A judgment of the circuit court against an insane person will not be set aside in equity because the plaintiff in the original action was permitted to testify concerning a · transaction with defendant, as such error could have been corrected by appeal. (Page 108.)

5. SAME—ENFORCEMENT OF JUDGMENT.—Before an adjudication of the mental unsoundness of a judgment debtor, the creditor may enforce his judgment against the debtor by execution and have the debtor's property sold. (Page 108.)

Appeal from Garland Chancery Court; *Alphonso Curl,* Chancellor; affirmed.

*Wood & Henderson,* for appellant.

1. The judgment of the circuit court against Augustus Peters in favor of appellee was void for want of jurisdiction, he being at the time, and before the institution of the suit, insane, and having no guardian to represent him in the action. 1 Black on Judgments, § 205; 1 Freeman on Execution, § 152; art. 7, § 34, Const. 1874; Acts 1873, p. 120, § 4; art. 6, § 10, Const. 1836; *Id.* § 3; English's Dig., chap. 48, § 5; Rev. Stat., chap. 43, § 6; 77 Ark. 355; 49 Ark. 51; 50 Ark. 34; 34 Ark. 71; 33 Ark. 575; *Id.* 728; 53 Ark. 45; 48 Ark. 544.

2. If it was a valid judgment, the real estate of Augustus Peters could, nevertheless, not be sold under an execution issued upon the same. 51 Ark. 366; 12 L. Ed. (U. S.) 1007; Kirby's Dig., § § 4020-4031, incl.

3. The third paragraph of the complaint states sufficient grounds to authorize a court of chancery to set the judgment aside and relieve Augustus Peters therefrom. 2 Pomeroy's Eq. Jur. § 823; 17 S. E. 317; 61 Ark. 341; 22 Cyc. 1245; 11 Cent. Dig. 1.

*A. J. Murphy,* for appellees.

1. The·judgment was valid, and it was not necessary that

the circuit court await an adjudication by the probate court of unsoundness of mind of Augustus Peters. 1 Black on Judgments (1891), § 205; 16 Am. & Eng. Enc. of L. (2d Ed.), 600-601; Wharton & Stille on Med. Jur., c. 16, p. 299, § § 282, 283, 284, 285; 29 Ark. 373; 51 Ark. 224, 229.

2. Execution may issue on such judgment as a matter of right, and a sale of the defendant's real estate thereunder is valid. Freeman on Executions (2d Ed.), 40, § 22.

3. If there was error in permitting plaintiff to testify with reference to transactions had with the defendant (which is not conceded), it was such an error as could have been cured on appeal to the Supreme Court from the circuit court, and was therefore not within the jurisdiction of a chancery court to review. 36 Ark. 383; 51 Ark. 341; 61 Ark. 348; 73 Ark. 555; 15 Am. & Eng. Enc. of L. 15; 75 Ark. 37; 85 Ark. 101.

McCULLOCH, C. J. This is an action instituted in the chancery court of Garland County by Augustus Peters, an insane person, suing by his guardian, to set aside a judgment rendered against him for debt in favor of Mary E. Townsend, and also to set aside a sale of real estate under execution issued pursuant to said judgment. This action is against the judgment creditor and the purchasers at the execution sale. The chancellor sustained a demurrer to the complaint, and the plaintiff appealed.

The facts with reference to the action and judgment in the Garland Circuit Court are set forth in the complaint in the present action, and are as follows: Mary E. Townsend filed her complaint in said circuit court against Augustus Peters to recover judgment on account for services claimed to have been rendered. Summons was served on the defendant, and in default of an appearance judgment was rendered for the amount of the plaintiff's claim. On a subsequent day Abraham Peters, who is the son of Augustus Peters, and appears in the present action as guardian of the latter, appeared in the Garland Circuit Court and filed a motion to set aside the judgment on the ground that the defendant was an insane person. That court sustained the motion, and set aside the judgment. The court also made an order appointing Abraham Peters as guardian *ad litem* of said defendant, and he filed his answer as such, raising an issue upon the allegations of the complaint and pleading the statute of limita-

tions as a bar to the plaintiff's right of recovery. He also pleaded a counterclaim against the account. The case proceeded to trial before a jury, both sides being represented by counsel, which resulted in a verdict and judgment in favor of plaintiff for the sum of $2,800. No appeal was prosecuted, and execution was issued, and real estate sold thereunder. Subsequently Augustus Peters was, by the probate court of Garland County, adjudged to be insane, and his son, Abraham Peters, was appointed as his regular guardian, and he instituted the present action. Was the judgment a valid one?

Section 34, article 7, of the Constitution of 1874 provides that probate courts shall have "exclusive original jurisdiction in matters relative to  * * * persons of unsound mind and their estates;" but an insane person not under guardianship can sue and be sued the same as a sane person, and the foregoing provision of the Constitution does not exclude the jurisdiction of other courts to hear and determine suits by or against insane persons, whether under guardianship or not. *Jetton* v. *Smead,* 29 Ark. 372; *Cox* v. *Gress,* 51 Ark. 224; 1 Black on Judgments, § 205; 1 Freeman on Judgments, § 152; 22 Cyc. 1222, 1224; *Flock* v. *Wyatt,* 49 Ia. 466; *Van Horn* v. *Hann,* 39 N. J. L. 207; *Maloney* v. *Dewey,* 127 Ill. 395; *Stigers* v. *Brent,* 50 Md. 214; *Livingston* v. *Livingston,* 67 N. Y. Supp. 789; *Prentiss* v. *Cornell,* 31 Hun 167; *Sanford* v. *Sanford,* 62 N. Y. 553.

The statutes of this State confer ample protection to the rights of insane litigants, either plaintiff or defendant, by requiring the court in which the action by or against such person is pending to see that he is represented by a next friend or guardian. An action by such person must be brought by guardian or next friend, and the defense of such person must be by his regular guardian or a guardian appointed by the court, and no judgment can be rendered against him until after a defense by guardian. Kirby's Digest, § § 6026-6029. The statute refers in express words only to persons judicially found to be of unsound mind; but it is not to be doubted that the Legislature intended to give equal protection to persons of unsound mind in actions by or against them, though not judicially declared to be such. The language of the statute warrants that construction.

Chief Justice COCKRILL, speaking for the court in *Cox* v.

*Gress, supra,* so construed the statute, and, after referring to the common-law rule that a lunatic could be sued without the intervention of a guardian or committee, said: "In equity the practice was different. That court would not proceed without the intervention of a guardian to protect the interests of the insane defendant. If he had been judicially ascertained to be insane, his committee or guardian was required to conduct his defense; but if they were hostile in interest to him, or if for any reason it was deemed best for his interest, the court appointed some other person competent to protect his interest as guardian *ad litem.* It was regarded as error to proceed against him without such guardian. If the insanity of a defendant in a pending suit was suggested, but had not been judicially ascertained, the court gave opportunity for an inquisition to be held, or took the necessary steps to determine the question for itself; and, having ascertained that the defendant was mentally incapable of making his defense, it appointed a guardian *ad litem* for him, and thereafter imposed upon him the restraints of infancy.

"Our statute regulating proceedings against lunatics adopts substantially the former practice in equity, and makes it applicable to all proceedings. Mansfield's Digest, § 4960 *et seq.* It is therefore incumbent upon the court in every civil case, where an insane person is defendant, to see to it that he is represented upon the record by a competent guardian, and it is error, as in a proceeding against an infant, to proceed without it."

It is insisted, however, that, under the constitutional provision which confers exclusive jurisdiction on the probate court in matters relating to persons of unsound mind and their estates, the adjudication of unsoundness of mind must be in that court, and, conceding that the jurisdiction of the circuit court to proceed with the action against such person after adjudication of unsoundness of mind is not excluded, the latter court must, before proceeding, await an adjudication by the probate court of the question of mental unsoundness. This contention cannot be sustained, and the decision of this court referred to above is directly against it.

It being seen that the jurisdiction of the circuit court to hear and determine an action against an insane person is not excluded by the constitutional provision hereinbefore quoted, it

necessarily follows that that court possesses the power to inquire into the mental condition of a defendant not already judicially found to be of unsound mind, for the purpose of ascertaining whether or not his defense must be made by a guardian. The power to hear and determine the case necessarily involved the power to inquire into the mental condition of the defendant, so as to protect his interest in the litigation, and the inquiry as to his mental condition is only for the purpose of that particular case, and extends no further. 22 Cyc. 1233; *Denny* v. *Denny*, 8 Allen (Mass.) 311; *Plympton* v. *Hall*, 55 Minn. 22; *Isle* v. *Cranby*, 199 Ill. 39; *Abbott* v. *Hancock*, 123 N. C. 99; *Wager* v. *Wagoner*, 53 Neb. 511; *Newcomb* v. *Newcomb*, 13 Bush (Ky.) 544; *Bensieck* v. *Cook*, 110 Mo. 173.

The next point relied on to set aside the judgment is that the plaintiff in the original action was permitted by the trial court to testify concerning transactions with the defendant, an insane person. This error could have been corrected by appeal. We are not aware of any principle of equity which would require a court of equity to set aside a judgment of a court of law on account of errors occurring in the trial of the case which could have been corrected by appeal. The statutes of this State provide that circuit courts may vacate their own judgment after the expiration of the term "for erroneous proceedings against an infant, married woman or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings." Kirby's Digest, § 4431. The statute does not, however, apply to this judgment, for the reason that the condition of the original defendant appeared in the record. The error, therefore, could have been corrected by appeal. And when the condition of such person appears in the record, and he is properly represented by a guardian, equity will not set aside such judgment for mere errors which could have been presented on appeal.

The most serious question in the case is whether the property of an insane person can be sold under execution to satisfy a judgment against him. The Revised Statutes of 1838 (chap. 78) on the subject of insane persons and their property, which, with certain amendments, remains in force to this day, contains ample authority for the management of such persons and their

estates by the courts exercising probate jurisdiction and for the sale of property through the orders of such courts for the payment of debts. The same statute, however, contains a provision that "on judgment against such ward, or his guardian, as such, the execution shall be against his property only, and in no case against his guardian's estate, unless he shall have rendered himself liable thereto by false pleading or otherwise." Kirby's Dig., § 4035. It appears, therefore, that the Legislature intended not to exclude the right of a judgment debtor to have ordinary process against the property of an insane judgment creditor for the enforcement of his judgment. On the contrary, the statute seems to clearly recognize that right, and to provide no exemptions in favor of the estate of an insane person. But, even in the absence of such clear statutory recognition, the authorities sustain the right of a judgment creditor to resort to ordinary process to enforce his judgment against an insane judgment debtor. 1 Freeman on Execution (3d Ed.), § 22; *Pollock v. Horn,* 13 Wash. 626. *Contra: Buckler v. Reese,* 100 Ky. 336.

In the present case the complaint does not allege that the sale under execution occurred subsequent to the judgment of the probate court of the mental unsoundness of the judgment debtor. Therefore, we need go no further than to hold that before such adjudication the property of such judgment debtor can be sold under execution.

Judgment affirmed.