LEVY *v.* MEYERE, ADMINISTRATOR.

4-7573                                      186 S. W. 2d 427

Opinion delivered March 26, 1945.

*J. L. Shaver* and *William A. Percy,* for appellant.

*Giles Dearing,* for appellee.

McHANEY, J.   Appellant and appellees, Sam Levy and Sarah Levy Barnett, are the children and sole heirs at law of Tena Levy, deceased.

On April 2, 1942, Tena Levy, being the owner of a 160-acre farm in Cross county and two brick store buildings in Earle, Crittenden county, executed and delivered to appellant three deeds to said properties, reciting a consideration in each deed of $1 and love and affection. Appellant did not file said deeds for record until September 29, 1942, and three days later Tena Levy brought this suit to cancel them and the record thereof.   She alleged in her complaint that her son Gilbert came to her representing that he must have some responsibilities or he would be put in the army, he being in the draft age.   He asked her to transfer her real estate to him by deed so he might show that she had no property and was dependent on him; that she was sick, had been for many months and was distressed about her son being in the army and agreed to make the conveyances, and that he agreed not to record the deeds and would deed the property back to her as soon as he was deferred; that she relied upon his representations and yielded to his importunities to satisfy his desire to remain at home with her and did not intend to convey to him any interest in said properties; that she was overreached by him; that the conveyance was without consideration; and that same was obtained by fraud.   The answer was a general denial and a plea of the statute of frauds.   Trial resulted in a finding, "That the deeds executed by the said Tena Levy on April 2, 1942, to the defendant Gilbert Levy were obtained from her by undue influence, false and fraudulent representations and without consideration and that same should be cancelled as clouds upon the title to the lands mentioned in said deeds."   A decree was entered cancelling said deeds and the records thereof.   This appeal is from that decree.

Tena Levy died testate on January 3, 1943, prior to the trial on June 30, 1944, and in her will, which was executed on October 9, 1942, and duly probated, she devised and bequeathed the real property here involved, particularly describing it, and all other property to her three children, share and share alike. The suit was revived in the name of the administrator, and the other heirs.

Appellant makes two contentions for a reversal of the decree against him: (1) that the evidence is insufficient to support the finding that the deeds were obtained by undue influence, false and fraudulent representations and without consideration; and (2) that she came into equity with unclean hands.

1. The rule in this state is that, in order to justify the court in cancelling, the evidence must rise above a mere preponderance thereof. It must be clear, cogent and convincing. *Stephens* v. *Keener,* 199 Ark. 1051, 137 S. W. 2d 253, and cases there cited. We are of the opinion that the evidence in this case satisfies that rule. It is undisputed in this record that Tena Levy was an elderly woman, in very poor health, not being able to take care of her physical necessities and was dependent upon her son Gilbert to look after her. He was in the draft age, had registered and was classified by his draft board as 1-A. She went with him before the board and explained her physical dependency on her son, that she was not financially dependent upon him, that she owned the property here involved, but was unable to take care of herself. He was deferred because of that condition. We think the trial court was justified in concluding that appellant induced his mother to convey the property to him on the theory that, if she denuded herself of her property, she would be both physically and financially dependent upon him and that he would be given a deferred classification. There are three undisputed facts in this record with others that convince us, as no doubt they did the trial court, that she did not intend for Gilbert to have the title to said property. One is that the deeds were not to be recorded. The fact that they were kept off the record from April 2, 1942, to September 29, 1942, is strongly corrobo-

rative of the testimony that the agreement was that they be not recorded. Another is that they were recorded in her lifetime and that within three days thereafter, or just as soon as she learned of it, she brought this action to cancel, charging her own son with indue influence, false and fraudulent representations in obtaining said deeds— the very son on whom she was so physically dependent. Another is that she made a will on October 9, 1942, devising this same property to her three children share and share alike, together with her other property. It is suggested that these actions were taken because of the influence of her other two children, but the evidence fails to establish this contention. We, therefore, conclude that the evidence was sufficient to justify the court in cancelling said deeds.

2. Appellant in his brief argues that his mother entered into a conspiracy with him to violate the Selective Service Act, 50 U. S. C. A., § 311, assuming that the facts alleged in her complaint are true. He made no such plea in his answer, and the question of unclean hands was apparently not an issue in the court below. But assuming that the defense may be raised here for the first time, we think it without substance. Again, the undisputed proof is that Gilbert was reclassified and put in class 3-A on March 27, 1942, six days before said deeds were executed and delivered, which classification temporarily deferred his induction into the army. He must have known this fact when he got the deeds from his mother, but he did not testify that he told her that he had received a deferred classification, and no doubt she knew nothing about it. Therefore, assuming that the conveyances could at any time have deceived the draft board, which they could not, his only conceivable purpose in getting them after his deferment was to deceive and defraud her, not the draft board. So, it appears to us that it would be a denial of equity to permit him to keep the fruits of his fraud on a plea that his old and diseased, but loyal and loving mother came into a court of equity with unclean hands.

Appellant cites a number of cases from *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822, to *Albright* v. *Karston,* 206 Ark. 307, 176 S. W. 2d 421, holding and applying the equitable maxim that he who comes into equity must come with clean hands, or, as otherwise expressed, he that has committed iniquity shall not have equity. But these cases are not applicable here. Mrs. Levy did not misrepresent any fact to the draft board and did nothing calculated to deceive them. She has committed no iniquity that deprives her of equity.

Affirmed.