BANKS *v.* HOWELL.

4-9780                                           248 S. W. 2d 95

Opinion delivered April 28, 1952.

*Reuben Chenowith* and *Joe D. Shepherd,* for appellant.

*Barber, Henry & Thurman,* for appellee.

HOLT, J.    This action involves the validity of a deed to 86.46 acres of ground in Yell County. November 28, 1950, Mrs. Virginia Howell, mother of Mrs. Garrett Jones, executed the deed in question to Wayne Banks (appellant) for a consideration of $600. Mrs. Howell, by her daughter as next friend, filed the present suit February 27, 1951, to cancel and set aside the above deed on the grounds that she (Mrs. Howell) lacked mental capacity to execute the deed. Appellants answered with a general denial and appellant, Banks, further pleaded, in effect, "that said deed was executed and delivered to him in trust for the use and benefit of Jim Klober, and that the said Wayne Banks had paid out as consideration and betterments bestowed to said property the separate sum of $600 and $90, and that he held title to said lands for the purpose of protecting his funds advanced."

A trial in June, 1951, resulted in a finding and decree for appellee on all issues. After finding Mrs. Howell incompetent at the time she executed the deed and said deed invalid, the decree recites "that upon repayment of the original purchase price, said (deed) should be in all things cancelled, set aside and held for naught, and that any and all right, title and interest of the defendants, Wayne Banks, Cora Ella Banks, his wife, and Jim Klober, should be divested out of them and invested in Virginia Howell."

This appeal followed.

For reversal, appellants first contend that the evidence was not sufficient to support the findings and decree. We do not agree.

We hold that the evidence offered by appellee more than satisfies the required burden. In other words, that appellee has met the burden of proof imposed.

When Mrs. Howell executed the deed (November 28, 1950) she was 78 years of age. There was evidence of mental weakness in 1948, and in April, 1949, she suffered a stroke (cerebral). Her family physician, Dr. Webb, testified: "Q. For what have you been treating her? A. Hypertension of the cardio-vascules and cerebral complications. Q. You did find and you are treating her for a cerebral accident? A. Yes, sir. Q. During April of 1949, did you attend Mrs. Howell when she had this stroke that has been testified about? A. I can't give you the exact date on that but it was about that time and I did attend. Q. What type of stroke did she have? A. She had a complete hemophlegic. . . . Q. From what you found when you examined her when she had this stroke, in your opinion, did that affect her mental condition? A. At the time? Q. Yes. A. Yes, it had a marked effect at the time. Q. To what extent, did it result in unconsciousness? A. That is right. Q. Approximately how long was she unconscious? A. Several days. Q. Can you state in your opinion and from your experience that had any effect on her subsequent mental condition? A. It left

her with a permanent change of personality. Q. The fact that she was found unconscious, would that indicate any brain damage? A. Yes, sir.''

Mrs. Jones testified, in effect, that her mother lacked mental capacity to make the deed, that following the stroke in 1949, her mother was like a child and had to be cared for as such, could not think for herself and that she (Mrs. Jones) transacted her business for her and that the day following the execution of the deed in question, her mother did not know she had sold the property. Mrs. Bullock, one of the daughters, and A. B. Cox, a grandson, testified positively that on November 28, 1950, Mrs. Howell lacked mental capacity to execute the deed.

Mr. Parks (unrelated to Mrs. Howell) testified that he had been renting the land in question since 1942 and paid rentals to Mrs. Howell, whom he had known for 40 years, and each time he paid the rent he tried to buy the land from her, but she said ''she did not want to sell at all, but if I ever sell it, I will let you have it.'' He paid the last rent either in October or November, 1950, to Mrs. Howell and ''A. Yes and and when I did (pay the rent) I went by and told Mrs. Jones (Mrs. Garrett Jones, her daughter) what I had done. Q. Why did you do that? A. I could see plainly that things were not right and that she was not responsible for business and I did not want somebody to think I did not pay the rent, so I told her.''

There was some evidence of a contradictory nature; however, when all of it is considered, we conclude, as indicated, that the trial court was justified in cancelling the deed in question.

Appellants also contend that Mrs. Garrett Jones, as next friend, lacked legal capacity to sue. This contention is untenable. Our statute, § 27-828, Ark. Stats., 1947, provides: ''The action of a person judicially found to be of unsound mind must be brought by his committee (guardian), or, if he had none, by his next friend. When brought by his next friend, the action is subject to the powers of the court, in the same manner as the action

of an infant so brought. [Civil Code, § 51; C. & M. Digest, § 1116; Pope's Digest, § 1332]."

Here, appellee had no guardian when suit was filed and had not been judicially found incompetent. We said in *Peters* v. *Townsend,* 93 Ark. 103, 124 S. W. 255, in construing this statute: "The statute refers in express words only to persons judicially found to be of unsound mind; but it is not to be doubted that the Legislature intended to give equal protection to persons of unsound mind in actions by or against them, though not judicially declared to be such. The language of the statute warrants that construction," and in *Missouri State Life Insurance Company* v. *Holt,* 186 Ark. 672, 55 S. W. 2d 788, we used this language:

" 'An insane person not under guardianship can sue and be sued the same as a sane person, and the foregoing provision of the Constitution [Art. 7, § 34] does not exclude the jurisdiction of other courts to hear and determine suits by or against insane persons whether under guardianship or not. . . . The statutes of this State confer ample protection to the rights of insane litigants, either plaintiff or defendant, by requiring the court in which the action by or against such person is pending to see that he is represented by a next friend or guardian. An action by such person must be brought by guardian or next friend, and the defense of such person must be by his regular guardian or guardian appointed by the court.' *Peters* v. *Townsend,* 93 Ark. 103, 124 S. W. 255." See, also, the more recent case of *Wilder* v. *Wilder,* 205 Ark. 414, 181 S. W. 2d 17.

Appellants' last contention is that the court erred in refusing to direct repayment to Banks (grantee in the deed) by appellee of not only the $600 (the conceded purchase price), which Banks had loaned Klober, but an additional $90 that Banks claimed to have loaned Klober. It appears that Banks had loaned Klober the $600 purchase price and that on the day following the execution of the deed to Banks by Mrs. Howell for $600, loaned

Klober $90 "to get married on." We find no evidence in this record that this $90 was used for betterments on the land or for any other purpose than as above indicated. Obviously, it should not be charged to appellee.

Finding no error, the decree is affirmed.