HARRAL *v.* HELTON.

5-1867                                    327 S. W. 2d 549

Opinion delivered September 28, 1959.

*G. P. Houston* and *Chas. F. Cole,* for appellant.

*Leon Reed* and *Alton Bittle,* for appellee.

PAUL WARD, Associate Justice. This appeal comes from a decree of the Cleburne County Chancery Court cancelling a deed executed by one Charles W. Helton on May 18, 1957, conveying certain real property in Heber Springs to appellants, R. L. Harral and his wife Pearl Harral. The suit to cancel said deed was brought by the daughter of C. W. Helton, Ruth M. Cody, as his next friend. After a lengthy hearing the trial court cancelled said deed on the ground that C. W. Helton did not have sufficient mental capacity to execute same. Appellants forcefully contend here that the decree of the trial court should be reversed, basing such contention on three separate grounds, to-wit: One. The lower court erred in not requiring the appellees, plaintiffs below, to execute a bond for cost; Two. Appellees' action should have been brought in the name of C. W. Helton and not in the name of Mrs. Ruth Cody as his next friend, and; Three. The evidence does not sustain the lower court's finding that C. W. Helton lacked the mental capacity to execute said deed.

One. C. W. Helton was a resident of Cleburne County for several years before he executed the deed in question, but about a month before this suit was filed his daughter, Mrs. Ruth Cody, took him to her home in Elmhurst, Illinois, to live with her. He was therefore required, by the first sentence of Ark. Stat. 27-2301, to file a cost bond in the Clerk's office before commencing this litigation. The latter sentence of said statute, however, provides that in lieu of filing such bond "the plaintiff may deposit with the Clerk of the Court a sum of money sufficient to pay all costs that have accrued or will probably accrue . . . subject to said sum being increased at anytime the court may deem necessary and by its order required." In this case we think there was a substantial compliance with the latter portion of the above-mentioned statute. At Page 400 of the record we find the following docket entry: "The Plaintiff at the time of filing his petition in this action instead of filing a bond for costs elected to make a cash bond which was done, and plaintiff paid $10.00 cash which was sufficient to pay the costs then accrued, or will probably accrue in such action. /s/ Alvie Heffington, Clerk."

It is admitted by appellants that the failure to file a proper cost bond at the proper time is a matter of abatement and does not go to the merits of the case. It appears obvious that the $10.00 deposit was insufficient and the trial court might well have required appellees to increase the bond. Not having done so, however, is not a sufficient reason or ground for this court to dismiss the cause of action. We could , however, require the bond to be increased, if, by doing so, it would afford any protection to the appellants, but in view of the disposition we hereafter make we deem it unnecessary to do so.

Two. We find no merit in appellants' contention that the cause of action should have been dismissed by the trial court because the complaint was brought by Ruth Cody as next friend for C. W. Helton. This issue has been decided adversely to appellants' contention by former decisions of this court. In the case of *Peters* v. *Townsend,* 93 Ark. 103, 124 S. W. 255, where the same

issue arose the court stated: "The statute refers in express words only to persons judicially found to be of unsound mind; but it is not to be doubted that the Legislature intended to give equal protection to persons of unsound mind in actions by or against them, though not judicially decreed to be such." The same issue arose again in the case of *Banks* v. *Howell,* 220 Ark. 439, 248 S. W. 2d 95, where the court stated the facts to be that "Here, appellee had no guardian when suit was filed and had not been judicially found incompetent." Then the court cited with approval the statement which we have copied from the *Townsend* case, *supra,* and the court also quoted with approval the following language: "The statutes of this State confer ample protection to the rights of insane litigants, either plaintiff or defendant, by requiring the court in which the action by or against such person is pending to see that he is represented by next friend or guardian." So, here, if in fact C. W. Helton was incompetent as the trial court held, it was not only proper to allow Ruth Cody to sue as next friend but it would have been the court's duty to appoint her or someone else to act as his next friend.

Three. Finally, it is ably insisted by appellants that the evidence is insufficient to support the trial court's finding of C. W. Helton's incompetency to execute the deed in question. To begin with, appellants are in error in their contention that the proof must be clear, cogent, and convincing. To sustain their contention the case of *Levy* v. *Meyere, Administrator,* 208 Ark. 389, 186 S. W. 2d 427, is cited. An analysis of the facts in this case, however, reveals that the clear, cogent and convincing evidence rule was used in connection with a suit to set aside a deed for fraud. The correct rule in a case of this kind is stated in *Fikes* v. *Lee,* 225 Ark. 192, 280 S. W. 2d 230, where we held that the trial court's finding must be supported by merely a preponderance of the evidence. The cases relied on to sustain the rule announced by this court in the *Fikes* case are set forth at Page 197 of the Arkansas Reports.

The testimony regarding C. W. Helton's mental capacity to execute the deed in question is conflicting and

by no means completely convincing either way. Mr. U. S. Hensley, who is a banker in Heber Springs testified that he was well-acquainted with Mr. Helton and that he did business at his bank; that he had seen him frequently and had observed his conduct and demeanor and thought he was peculiar before the deed was executed; that he would have to ask Mr. Helton the same question three or four times, and he did not appear to be normal; that at times when he did business with the bank he would come back later and ask what had been done and that he was forgetful; and, based on those observations it was his opinion that Mr. Helton was not qualified to transact business. It is admitted that appellants paid Mr. Helton $1,250.00 for the property in question but Mr. Hensley, who is in charge of real estate and loans at the bank and is required to know the fair market value of property, stated that in his opinion the property in question was worth $6,500.00 to $8,000.00. There was somewhat similar testimony given by Mr. Harvey Parish who owns the Harvey Hotel at Heber Springs. The substance of his testimony was that he did not think that Mr. Helton was competent to attend to business and that the property in question was worth around $7,000.00, and that at one time he offered him $5,500.00 cash for it. Dr. Gerald Pearce testified that he had treated Mr. Helton for skin cancer and that in his opinion Mr. Helton was mentally confused at times; this witness also testified that he observed Mr. Helton in 1955 and also in July of 1957 and that in his opinion Mr. Helton was not competent to attend to business. Several other witnesses gave testimony similar to that set forth above and some stated that the property was worth as much as $7,500.00.

On behalf of the appellants it was shown by a very large number of people who knew Mr. Helton and associated with him frequently that they had not noted anything abnormal about him and that in their opinion they thought he was competent to transact business. Appellants attached special importance to the testimony of Mr. Roy Raywinkle who is in the abstract business in Heber Springs and who took the acknowledgment

of Mr. Helton to the deed in question. On direct examination, among other things, this witness stated:

"Q. Now, in your opinion was he cognizant and knew and appreciated what he was doing when he executed the deed?

A. Well, of course, I just know Mr. Helton when I see him. I never had any personal contact with him or any personal conversation with him. My natural presumption was that he knew what he was doing but, of course, as I tell you, I — I just knew him when I saw him. I never had any personal contact or any personal conversation with him.

Q. I'll ask you this way: If there had been any question in your mind about it, Mr. Raywinkle, would you have executed the deed?

A. No, sir; I would not."

It is argued by appellants that the testimony of a Notary Public who takes an acknowledgment to a deed is entitled to more weight than that of other witnesses and they cite as authority *Carter* v. *Williams,* 224 Ark. 378, 273 S. W. 2d 531. We do find in the second headnote of the cited case the statement that such testimony "is entitled to great weight". We do not find anything in the opinion, however, which attaches any special significance to that character of testimony.

After carefully reviewing the testimony of the numerous witnesses, both for appellants and appellees, we are unable to see that the trial court's finding regarding the incompetency of Helton to execute the deed in question is contrary to the weight of the evidence. We reach this conclusion particularly in view of the fact that the trial judge had an opportunity which we do not have to observe the witnesses and evaluate their testimony. The trial court was also entitled to take into consideration the fact, as shown by the weight of the testimony, that appellants did not pay what the property was worth. It would have been justified in finding that the property was worth three or four times what appellants paid for it. In the *Fikes* case, *supra,*

where the question of the mental capacity of the grantor was involved and where he received $3,000.00 for certain property, this court said: ". . . the Chancellor may well have found it (the property) was worth considerably more than $3,000.00, and, if so, was a circumstance which the chancellor had the right to take into consideration in his over — all view of the case." In the same case it was likewise stated that an inadequate consideration is a circumstance to be considered in determining whether relief shall be granted in a case of this kind.

Affirmed.