## STANLEY *v.* SMITH.

### Opinion delivered October 7, 1918.

1. DAMAGES—WHEN NOT EXCESSIVE.—A verdict for $450 for damages
   to personal property *held* not excessive.

2. LANDLORD AND TENANT—WRONGFUL EJECTION—INSTRUCTION.—In
   an action by a tenant against his landlords for damages to personal
   property caused by his wrongful ejection from the leased premises,
   an instruction that "if plaintiff's wife took immediate charge of said
   property after its removal defendants would not be liable for the
   value of any of the articles which may have subsequently been lost or
   injured" was properly refused where the evidence tended to prove
   that the property was injured by exposure to the weather, and that
   plaintiff was unable to secure shelter for the property.

3. TRIAL—SPECIAL FINDINGS.—It was within the discretion of the court
   to require the jury to make special findings.

Appeal from Cross Circuit Court; *W. J. Driver,*
Judge; affirmed.

*L. C. Going,* for appellants.

1. The verdict is against the evidence. The dam-
ages, if any, arose from plaintiff's own neglect. The total
damages proven only aggregate $35, and the verdict is
excessive.

2. The court erred in refusing to direct a verdict
and in refusing to require the jury to answer the inter-
rogatory.

*J. C. Brookfield,* for appellee.

1. The evidence supports the verdict. 46 Ark. 524;
66 *Id.* 175; 44 *Id.* 486.

2. The verdict is not excessive. 15 Ark. 452; 24
*Id.* 55.

3. There is no error in the instructions. Special
findings are authorized by law. The judgment is right.

WOOD J.   This action was brought by the appellee against the appellants.  Appellee alleged that appellants entered his home which he occupied under a lease from the appellants; that appellants drove his wife from his home, took possession of his household and kitchen furniture and threw the same into the public road in the mud while a rain was falling, by which appellee was damaged as follows:

| | |
|---|---:|
| 1 piano | $250.00 |
| 2 brass bed-steads | 22.75 |
| 1 wooden bed-stead | 5.00 |
| 1 princess dresser | 125.00 |
| 1 oak dresser | 5.00 |
| 1 wash stand | 2.50 |
| 1 sewing machine | 17.50 |
| 1 ice box | 5.00 |
| 1 davenport | 12.50 |
| 2 feather beds | 22.50 |
| 2 felt mattresses | 12.50 |
| 1 straw mattress | 1.25 |
| 1 ice cream freezer | 1.25 |
| 1 heating stove | 6.25 |
| 1 cook stove | 9.00 |
| 500 pounds of meat | 125.00 |
| 1 bowl and pitcher | 2.50 |
| 1 slop jar | 1.25 |
| Picture frames | 3.00 |
| 1 set of cooking utensils | 6.25 |
| Stove pipe | 1.00 |
| Rocking chair | 2.50 |
| Plain chair | 1.25 |
| 1 hand saw | 2.00 |
| 1 kitchen safe | 2.50 |
| 1 lot of tools | 7.50 |
| 1 lot of harness | 15.00 |
| 2 tons of cotton-seed | 300.00 |

Appellee alleged damage also to his wife and son resulting from exposure in the rain in the sum of $250. He alleged that the acts complained of were maliciously

and wantonly done and prayed for punitive damages in the sum of $1,000. The appellants answered and denied all material allegations of the complaint. The testimony of the appellee tended to sustain the allegation of his complaint as to the illegal and wrongful ejection of his family from the home of appellee and the removing therefrom by the appellants of the items of household and kitchen furniture specified therein, and the placing of the same on the river bank.

The appellants virtually concede here that the ejection was unlawful. At least, they make no contention that same was lawful. The jury returned a verdict in favor of the appellee in the sum of $450. Judgment was entered in his favor for that sum, from which is this appeal.

The appellants contend here, first; that the verdict is contrary to the evidence; second, that the court erred in refusing to give instruction No. 9 requested by the appellants, and third; that the court erred in refusing to require the jury to answer the following interrogatory: "If you find for plaintiff, what articles of property do you find were lost, destroyed or damaged, and the value of, or damage to each article?"

1. It could serve no useful purpose to set out and discuss in detail the evidence on the issues of fact. The appellee testified that "they (appellants) threw my stuff on the river bank and when I got back where it was, it was pouring down rain." His testimony and the testimony of his wife tended to show that a piano, which had cost $275 four months before, was damaged by the rain so that it was "not much 'count, keys all down, not much sound." He alleged the damage on this item of $250. A couple of bed-room sets, one costing $57 which was new, and the other $65, "went down the river." The sewing machine that cost about $19 "that was all right at the time" also went down the river. Appellee lost what was estimated at "about 500 pounds of home killed hog meat" worth about 15 or 16 cents a pound. Appellee had six sets of harness: "got tramped all down in the mud; got

tore up; saved one set, worth about $3.50 to $4 a set."
Appellee lost, "about 30 odd hundred pounds of cotton-
seed worth about $45 a ton."

Appellee testified to various other items that were
lost or damaged and stated what they were worth.   One
witness testified that he passed up the river and saw ap-
pellee's piano and household furniture on the bank and
that it had then been raining two or three days.   Another
witness testified that he saw the furniture on the bank of
the river the second day after it had been put there and
that it was in a bad shape; that the cotton-seed were wet;
that hogs and cattle had been tramping over it and that it
was impossible for anybody to get a house at that time;
that witness tried to get appellees a house and failed;
that appellees got an order from the chancellor restrain-
ing the appellants from interfering with appellees' pos-
session and they moved back into the house.

Appellants made no specific objection to the testi-
mony that was offered by the appellee.   The testimony of
appellee tending to show what he had paid for the arti-
cles mentioned in his complaint, the length of time he had
used same, their cost, their present worth and damaged
condition, was relevant on the issue as to the measure of
appellee's damages.   See *Perkins* v. *Ewan,* 66 Ark. 175.

2.   Appellants' prayer 9 was as follows: "If plain-
tiff's wife took immediate charge of said property after
its removal, defendants would not be liable for the value
of any of the articles which may have subsequently been
lost or injured."   The appellee testified that he left his
wife in charge of the household goods the day they were
moved by the defendant, and that she was in charge of
same when he got back.   The appellee was not at home at
the time the goods were moved out of the house.

John Stanley testified that he "told the negroes to
put the furniture under a pecan tree next to Rogers'
house," when the wife of plaintiff said:   "Don't put it
down there, put it down in front of Mr. Lindley's house
because Walter will be up after a while, and we will take
care of it this afternoon."   Witness "sent some lumber

up there to floor those vacant tents and she said she did not want it; that Walter would take care of the furniture.''

The prayer for instruction 9 was not a correct declaration of law for the reason that there was testimony tending to prove that efforts had been made to obtain a house for the appellee, and that none could be found. There was testimony from which the jury might have found that appellee's property was damaged by reason of its removal from the house by appellants, notwithstanding the appellee's wife took immediate charge of the same. The instruction was therefore misleading. Besides, the subject-matter of this prayer for instruction was sufficiently covered by instructions 2 and 3 as follows:

''2. You are instructed, gentlemen, that the act of the defendant in moving from the house, testified about the property mentioned, was a wrongful act, and that the plaintiff is entitled to recover from the defendant the value of any of the property that was lost or destroyed or damaged and injured on account of the wrongful act in moving from the house, except in so far as the act of the plaintiff in failing to care for the property was concerned, and about which I will now instruct you.

''3. It was the duty of the plaintiff, after his property was removed from the house, and, as soon as he was apprised of its position and condition, to use due diligence and reasonable effort, with the means and opportunity available to him, or reasonably procurable, to protect said property against loss and damage, and to the extent of any loss and damage due to the failure of the plaintiff to exercise such care and diligence, the defendant would not be liable, under the rules as announced to you.''

3. It was within the discretion of the court to require or not the jury to make special findings as requested by appellants, and the court did not abuse its discretion in refusing to require such special findings. *L. R. & Ft. S. Ry. Co.* v. *Pankhurst,* 36 Ark. 371. There is no error in the record and the judgment is affirmed.