Missouri Pacific Railroad Company *v.* Hampton.

4-4888

Opinion delivered January 10, 1938.

336

*R. E. Wiley* and *Henry Donham,* for appellants.

*J. H. Lookadoo* and *Tom W. Campbell,* for appellee.

MEHAFFY, J. On January 2, 1937, the appellee filed in the Clark circuit court a complaint against the appellants for damages for personal injury and death of Holman Hampton, alleged to have been caused by the negligence of appellants. The appellee alleged that on August 4, 1936, on account of the joint and concurrent negligence of all the defendants, the said Holman Hampton was seriously and fatally injured, and from the effects of said injury he died in the Missouri Pacific Hospital in Little Rock, Arkansas, on August 29, 1936. It was alleged that on August 4 the said Holman Hampton was working as a servant and employee of the appellants, railway company and Guy A. Thompson, trustee, assisting in taking up steel rails on a branch line of the Missouri Pacific Railroad between the stations of Hartman, in Johnson county, and Ozark in Franklin county, Arkansas; that the defendant, Cleo Holloway, was work-

ing as an employee of the said appellants, and as the steel rails were taken up from the branch line track they were loaded upon push cars and were thereby transported to defendant's station at Ozark. One of the said push cars was alleged to have been found in such condition that it could not be used, and it became necessary to transfer said defective car to the rear of the string of push cars and, there being no switch available, it was necessary to lift the said defective car off the track and place it on the side of the track until the string of push cars could be moved forward and then the disabled car replaced on the track in the rear of the string of cars. It was necessary to set said disabled car upon its edge or side while the other cars were being moved past it. The employees engaged in moving the said car were the deceased, Holman Hampton, the defendant, Cleo Holloway, and two negro men, whose names and whereabouts are unknown to plaintiff. When the string of push cars was moved past the bad conditioned car the said Holman Hampton, Cleo Holloway and the two negroes, who were also employees of defendants, took hold of the disabled push car for the purpose of turning it down on its wheels and setting it back upon the track at the rear of the string of cars. As they were endeavoring to set the car back the two negroes suddenly and without warning turned loose of the said car and jumped and ran away and Cleo Holloway also turned loose of the said car and thereby the entire weight of the push car, which weighed approximately 1,000 pounds, was thrown upon deceased, Hampton, who was unable to escape, and the full weight of the said car was cast upon him and he was crushed to the ground, and so seriously injured that he was made to suffer therefrom great and excruciating pain and mental anguish, which injuries and pain and anguish grew constantly worse until he finally died therefrom on August 29, 1936.

It was alleged that at the time of the fatal injury to said Hampton, he was a strong, healthy, active, industrious, able-bodied young man, and was at the time receiving good wages. He left surviving him his widow

and three children. Plaintiff prayed judgment for damages in the sum of $75,000.

A petition for removal to the federal court was filed and by the court granted. The federal court remanded the case to Clark county circuit court. The defendants then filed answer denying all the material allegations of the complaint, and alleging that the death of Hampton was the result of disease and not due to an injury received while working for defendants. They also pleaded contributory negligence and assumption of risk.

There was a verdict and judgment for $27,500. Motion for new trial was filed and overruled, and the case is here on appeal.

The appellants urge four grounds for a reversal of the judgment. First, it is contended that the evidence is insufficient to sustain the judgment.

Cleo Holloway testified that he knew Hampton during his lifetime, and that they worked together the first part of August, 1936; they were engaged in taking up track between Ozark and Hartman; witness was driving the motor car and Hampton was rather overseeing the job; were hauling rails on a motor car; the rails would be loaded on a push car which was about 9 feet long and 4 or 5 feet wide, maybe wider, and witness judges it would weigh between 800 and 1,000 pounds; the wheels, axles and running gear were constructed of iron like a flatcar, only smaller; they would load a string of rails on two push cars coupled together and then hook them onto a motor car and pull them into Ozark; while they were at this work, Hampton got injured about August 4; they had two loaded push cars and an empty one in front, and this empty car was disabled and they could not use it until it was repaired; they turned it upon the side of the track to pass it with the other cars, and when they passed it they went back to let it down; Hampton and two colored boys were helping witness; they were all working for the Missouri Pacific Railroad Company; when they started to let down the push car, two colored boys turned it loose and witness saw that he and Hampton could not hold it, and witness jumped back and Hamp-

ton was in the middle where he could not get out of the way and it crushed him down; when it settled on him he was down under the edge of it on his shoulder and back; the biggest part of the weight of the car was resting on him; they lifted it up for him to get out; he complained of his side and left shoulder; he continued to work until the 14th or 15th; he complained of pains in his body, side or back every day; he did not work, he was just around there; prior to that time he was in perfect health; he got worse from there on; before he received this injury he had applied for another job with the railroad company—for the job of running a ballast disk; he got that job and started operating about August 17; it was a riding job; he worked there three days and then got so bad he could not work.

Irene Hampton, widow of the deceased, testified that when deceased came home from work on August 4 he complained of his left side and back and clear on down his side; he went back to work, but complained all the time and it got worse all the time; when he would come home at night he would be suffering and was not able to sleep and rest at night; the last day he tried to work was on August 19; when he came home on the 19th he was very sick and did not attempt to go back to work on the 20th; witness begged him not to go; she called a doctor on the 20th, Dr. Pillstrom. Under the advice of Dr. Pillstrom, deceased was sent to the Missouri Pacific Hospital at Little Rock, and died on August 29. There was a large swelling just below the shoulder blade and it got larger, was about as big as the palm of your hand; this was on the left side of the backbone below the shoulder blade; deceased was 32 years old; they had three children; he worked at railroading for about ten years and earned from $150 to $200 per month. He was then cut off the board on account of the depression and had to seek other work; about the first of August he applied for a job on the leveling disk; that is a machine that runs over the track to shape it up; he got that job on the 15th or 16th of August; he worked about three or four days on the disk machine; he was getting $2.40 a day on

the track job, and $4.80 for operating the disk machine; spent all of his earnings on his family.

Amos Spicer, Paul Shipley, and Jack Morgan all testified to the dying declarations of Hampton. They testified that the deceased said in substance: That he was going to die; that he got his back and side hurt and that he had not said anything about it because he was afraid he would get fired off the job.

Dr. Pillstrom testified that in his opinion the deceased's condition was caused from an injury.

Dr. A. G. McGill testified, in answer to a hypothetical question, that he thought the injury was the cause of his death.

The evidence of appellants' witnesses is in conflict with the evidence of appellee's witnesses as to the condition of deceased and the cause of his death; but this court has many times held that in determining whether the evidence is sufficient to sustain the verdict and judgment, we must not only view the evidence in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict it will be sustained, but in determining whether there was sufficient evidence to sustain the verdict of the jury, we look at the evidence favorable to appellee alone. *Humphries and Kroger Grocer. & Baking Co.* v. *Kendall, ante* p. 45, 111 S. W. 2d 492; *Missouri State Life Ins. Co.* v. *Holt,* 186 Ark. 672, 55 S. W. 2d 788; *Missouri P. Rd. Co,* v. *Harville,* 185 Ark. 47, 46 S. W. 2d 17; *Baltimore & O. Rd. Co.* v. *McGill Bros. Rice Mill,* 185 Ark. 108, 46 S. W. 2d 651; *Altman-Rodgers Co.* v. *Rogers,* 185 Ark. 561, 48 S. W. 2d 239; *Halbrook* v. *Williams,* 185 Ark. 885, 50 S. W. 2d 243; *Arkansas P. & L. Co.* v. *Connelly,* 185 Ark. 693, 49 S. W. 2d 387; *Chicago, R. I. & P. Ry. Co.* v. *Matthews;* 185 Ark. 724, 49 S. W. 2d 392.

It is earnestly argued by appellants that because their witnesses testified that deceased's condition and death were caused by disease, that appellee cannot recover, because they say that it appears that the injury and death could have been caused by disease as well as by an injury. It is true that where the testimony leaves

the matter uncertain, and shows that any one of two or more things may have brought about the injury and death, for one of which the employer would be responsible, and for the others he would not be responsible, there can be no verdict for the plaintiff. This rule is well established, and if all the evidence showed that the injury and death might have occurred from injury or disease, there could be no recovery; but all the evidence does not show this. Holloway testifies that he was injured, and testifies as to the manner of the injury; how it occurred. Deceased's dying declaration shows how the injury occurred, and when the injury occurred the evidence shows that there was one boil on his arm, which the doctor lanced, and that deceased said that there was another boil on his body, but it was getting well.

The facts as to the injury were stated to Dr. McGill in a hypothetical question, and he gave it as his opinion that the injury caused his death. The first doctor that treated him, from his examination, concluded that he had had an injury and asked deceased. Deceased did not answer.

It is urged, however, that the fact that deceased did not tell anybody about the injury until immediately before death, indicates that he had not received an injury. The undisputed evidence shows that before the injury he had applied for another and better job, and he evidently did not want to claim that he had an injury because he was afraid he would not get this other job. The undisputed evidence shows that he did get the job after the injury. His dying declarations also show that he was afraid he would lose his job if he told that he was injured. But these were all questions for the jury.

The rule is well stated in the opinion of *Gunning* v. *Cooley,* 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720, where the court said: "Issues that depend on the credibility of witnesses and the effect or weight of evidence are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence of the witnesses for the opposing party proves all that it reasonably may be found suf-

ficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that are fairly deducible from them.'' See, also, *Gardner* v. *Mich. Rd. Co.*, 150 U. S. 349, 14 S. Ct. 140, 37 L. Ed. 1107; *Richmond & Danville Rd.* v. *Powers*, 149 U. S. 43, 13 S. Ct. 748, 37 L. Ed. 642.

That is the established rule of this court, and the fact that this court would have reached a different conclusion had the judges of this court sat on the jury, or that they are of opinion that the verdict is against the preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence. 4 C. J. 859, 860; *Missouri & N. A. Ry. Co.* v. *Johnson*, 115 Ark. 448, 171 S. W. 478; *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S. W. 2d 689; *Met. Life Ins. Co.* v. *Gregory*, 188 Ark. 516, 67 S. W. 2d 602; *Cunningham* v. *Union Pac. Ry. Co.*, 4 Utah 206, 7 Pac. 795; *Barlow* v. *Foster*, 140 Wis. 613, 136 N. W. 822; *Mathis* v. *Magers*, 191 Ark. 373, 86 S. W. 2d 171; *Smith* v. *Arkansas P. & L. Co.*, 191 Ark. 389, 86 S. W. 2d 411.

Where there is a conflict in the evidence, the question is to be determined by the jury, and not the court. The jury sees the witnesses on the witness stand, hears them testify, can observe their demeanor while testifying, and this court has no opportunity to observe the witnesses nor to judge from their manner of testifying whether or not they are telling the truth.

It is next contended by the appellants that the court erred in permitting witness, Paul Shipley, to testify that the deceased told him that he had not said much about getting hurt because he was afraid he would get fired off the job. A sufficient answer to this argument is that Amos Spicer had already testified to the same thing that Shipley testified to, and Spicer's testimony was admitted without objection. Shipley's testimony was, therefore, merely cumulative, and under many decisions of this court, it was not error to permit this even if it had been incompetent, which we do not decide.

Appellants next contend that the court erred in permitting Dr. McGill to testify to the hypothetical question

that in his opinion the death of deceased was caused by the injury. The appellants' attorney objected to the question and the court asked him on what ground. He, stated: "On the ground that he hasn't give the statement that the man never claimed to be injured or give any history of the injury to the doctors who treated him or made any complaint of that kind at all." That was the only objection to the hypothetical question. This was not a necessary part of the hypothetical question, and it was not error to permit the question and answer. Besides, if appellants' counsel thought there were any facts omitted from the question which were essential to forming a conclusion, his remedy is to put those additional facts before the witness on cross-examination. 11 R. C. L., § 579, *et seq.*

This court has said: "In taking the opinion of experts, either party may assume as proved all facts which the evidence tends to prove. The party desiring opinion evidence from experts may elicit such opinion upon the whole evidence or any part thereof, and it is not necessary that the facts stated, as established by the evidence, should be uncontroverted. Either party may state the facts which he claims the evidence shows, and the question will not be defective if there be any evidence tending to prove such facts. When a party seeks to take an opinion upon the whole or any selected part of the evidence, it is the duty of the court to so control the form of the hypothetical question that there may be no abuse of his right to take the opinion of experts." *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405; *Missouri & N. Ark. Ry. Co.* v. *Daniels*, 98 Ark. 352, 136 S. W. 651.

Again, this court said: "In propounding a hypothetical question to an expert witness, the data upon which it is based need not cover all of the facts which have been proved in the case. The party offering the testimony may select such facts as he conceives to have been proved, and predicate his hypothetical question thereon." *Arkansas Midland Rd. Co.* v. *Pearson*, 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317.

The object of the appellee in asking this hypothetical question was to get an opinion as to what caused the death of deceased.

"All the questions relating to the form of hypothetical questions involve a large element of discretion in the trial judge, who has the circumstances far more clearly before him than the appellate court can have." 11 R. C. L. 581.

It is also argued in this connection by appellants that dying declarations were not admissible for any purpose in civil cases prior to the passage of the act of 1935.

"The sanction of dying declarations is equally efficacious whether it speaks of a murder or a robbery or a fraudulent will, and the necessity being the same, the admissibility should be the same." 3 Wigmore, 167.

Dying declarations were admitted in all cases, civil as well as criminal, until the rule restricting their admissions was adopted by the court. Wigmore further says: "The spurious principle is recognized as unworkable in logical strictness, and when fairly carried out, comes into conflict with convenience and good sense.

"Its limitations are hearsays of the last century, which have not even the sanction of antiquity. They should be wholly abolished by legislation."

It is next contended that the court erred in denying their petition to remove to the District Court of the United States. The cause was removed to the United States district court, and by that court remanded, and after the evidence was introduced in the trial, the motion was renewed. But appellants say that the only ground upon which the state court had jurisdiction after the filing of the petition for removal was that there was a good joint cause of action against the resident defendant and the nonresident defendant. It is true that the only evidence tending to show that Holloway was guilty of negligence is his own testimony and the dying declaration of deceased. He testified that he and two negroes were assisting deceased in putting the push car back on the track. He undertook, it is true, to put most of the blame on the negroes, but he was a party to the suit himself.

and we have often held that where a party to the suit testifies, that the effect of his testimony is a question for the jury, although he may not be contradicted by any witness. The jury, of course, concluded that he was guilty of negligence, and they had a right to do this from the evidence.

There was ample evidence to justify the jury in finding that both Holloway and the other appellants were guilty of negligence.

The judgment of the circuit court is affirmed.

GRIFFIN SMITH, C. J., and SMITH, J., dissent.