EQUITABLE LIFE ASSURANCE SOCIETY *v.* MANN.

4-3663

Opinion delivered October 1, 1934.

*Rose, Hemingway, Cantrell & Loughborough,* for petitioner.

*Frauenthal & Johnson* and *Walter L. Pope,* for respondent.

BAKER, J. This is a petition filed by Equitable Life Assurance Society of the United States praying that a writ of prohibition issue to prevent Richard M. Mann, judge of the Pulaski Circuit Court, Second Division, from further proceeding in the cause of Robert E. Mattison, *non compos mentis,* by Paul Belding, his next friend,

against the Equitable Life Assurance Society of the United States.

The complaint in the cause in the second division of the circuit court of Pulaski County was filed on April 3, 1934. It alleges that R. E. Mattison, a *non compos mentis*, by his next friend, Paul Belding, is a citizen and resident in the city of Little Rock, county of Pulaski, Arkansas, and that the defendant is a corporation organized and existing under the laws of the State of New York, duly authorized to transact business of life and disability insurance in the State of Arkansas. Other facts are alleged as tending to show liability of the defendant to the plaintiff.

The complaint states that on January 1, 1921, plaintiff became physically and mentally incapacitated to such an extent that he was wholly unable to engage in any occupation or perform any work for compensation of financial value; that the plaintiff has at all times since that date been wholly, physically and mentally incapacitated to such an extent that he is now suffering total and permanent physical and mental disability.

Motion was filed by the petitioner named herein to quash the summons and service thereof on April 23, 1934. It entered its appearance solely for the purposes set out in the motion, alleging that it had obtained permission to do business in the State of Arkansas pursuant to the provisions of § 6063 of Crawford & Moses' Digest, and that it has stipulated that legal process served upon the Insurance Commissioner of the State of Arkansas shall have the same effect as if personally served upon the defendant within the State. It alleges that the policy upon which the plaintiff had filed suit was delivered to him in the State of Tennessee, at a time when the plaintiff was a citizen and resident of the State of Tennessee, and that the same is a Tennessee contract. It also alleged that, at the time of the institution of the suit in the circuit court, Mattison was not a citizen or resident of the State of Arkansas, and at the time of the filing of the motion he was not such a citizen or resident.

On May 8 motion was filed in the case pending in the circuit court to substitute Paul Belding as guardian and

curator of R. E. Mattison as party plaintiff, said Paul Belding having been appointed by the probate court of Pulaski County on the 7th of May, 1934.

Evidence was heard upon the motion to quash. Paul Belding testified that he met R. E. Mattison about the 15th of October, 1932, entered into a contract with him to file suit against the insurance company; that he made a trip with Mattison through the States of Mississippi and Alabama, and finally to Memphis, gathering affidavits as to his condition and in preparation for the suit. He testified that Mattison had a type of insanity called psychosis; that he had been under treatment of Dr. Wallace at Western State Hospital in Bolivar, Tennessee, and had been paroled; that the parole had been issued prior to the time of making this trip; that Mattison had been in Little Rock, and endeavored to open a business at 812 Main Street; that on account of the fact that his health seemed to be again breaking, or a relapse seemed to be setting in, Mattison returned to the hospital at Bolivar, Tennessee, on the 7th of March; that he had left Little Rock voluntarily; that he is still in the hospital in Tennessee; that at the time he was attempting to go into business in Little Rock he had taken up his residence in that city as a citizen; that he had formerly lived in Little Rock, and had been in business as a tailor; that he, the witness, was with Mattison a great deal of the time, had conversed with him, and that Mattison had sufficient mental capacity to form an intent to make Little Rock his home; that it was the intention of Mattison to return to Little Rock when he felt sufficiently restored.

Dr. W. W. Wallace, a physician of the Western State Hospital at Bolivar, Tennessee, knew Mattison, and stated that he was first admitted to the institution on May 3, 1929, by reason of a previous adjudication of insanity; that he was paroled on August 15, 1931; that after his parole he returned to the hospital September 19, 1931, and remained there until September 25, 1933, on which date he left; that his condition had improved and five days later, on September 30, he was paroled.

The adjudication of insanity was had in the county court of Shelby County, and no subsequent adjudication

was had upon any return to the hospital. His trouble was diagnosed upon entry to the hospital as manic depressive psychosis.

Harry Pfeifer, Sr., testified that Mattison had formerly been in the employ of Pfeifer's in Little Rock; that he had been away many years; that he had returned to Little Rock sometime in the fall of 1933, and that he had. samples, and was going out soliciting orders; that he, Pfeifer, had a vacant store at 812 Main Street, and that he delivered the keys to Mattison and permitted him to occupy the store without charge for a time; that he kept the store until he made a trip down to Houston, Texas, or Dallas; that he talked with him on occasions, loaned him a few dollars at times, which he paid back; that Mattison was planning to put in a store or tailor shop and other shops in different cities, and that he was "going to make enough money to endow an orphanage."

There was also offered in evidence the adjudication of insanity made by the county judge of Shelby County, Tennessee. Mattison was committed as a poor person, no one being legally liable under the insanity law for his maintenance, and upon proof and a finding that he had been a resident of Tennessee for twelve months or more before he was adjudicated insane.

This statement, perhaps, does not include all of the facts, nor all of the testimony heard in circuit court, but such a material part thereof as to show the issues on the presentation of defendant's motion to quash, and upon this hearing the learned circuit judge overruled the motion to quash. The sole point in issue, upon this motion to quash, was the place of residence of Robert E. Mattison, the plaintiff in the suit filed in the circuit court.

It is urged by the petitioner that, as the said Robert E. Mattison was a resident of Tennessee at the time of the filing of the suit in the circuit court for the second division of Pulaski County, Arkansas, that court did not acquire jurisdiction. If that were an undisputed question of fact, petitioner's conclusions would be correct. We realize that Western State Hospital, located at Bolivar, Tennessee, is a State institution intended to care for the insane in a particular district in the State of

Tennessee, as fixed by law. Like most hospitals of the kind, the law of that State provides that, to be eligible to enter the said hospital, the patient must be a resident of the State, and, in this particular case, of the district in which it is located. It is urged forcefully that, since he was adjudicated to be insane in 1929, the presumption of insanity continues and particularly by reason of the fact that he has returned, and was at the time of the filing of the suit, and is yet, an inmate of that institution. However, he was paroled the last time in September of 1933, and the effect of such parole is such as to raise another presumption of restored sanity.

In a Tennessee case the court held, that the fact of insanity having been judicially ascertained, the law presumes its continuance until his restoration to sanity, or until a lucid interval, is established by evidence. In the same case the court also said: ''But the record contains nothing from which we can presume with certainty that he was discharged by officers of the asylum because they judged him restored to his sanity, but we may regard as probable that such was the fact. If there was such evidence, we should hold it, at least, *prima facie* evidence of restored sanity.'' *Haynes* v. *Swann,* 6 Heiskell 560, 587.

The evidence in this cause tends to show that Mattison had sufficient intelligence to choose a place of residence, and that he chose Little Rock, Arkansas, as such place of residence.

But he voluntarily returned to the Western State Hospital at Bolivar, nearly a month prior to the institution of this suit, and the most that could be said about his return and reentering the hospital in Tennessee is that there may be a presumption that he again changed his mind to return to Tennessee and reenter the hospital under his former commitment as a resident of that State, but that is a question of fact undetermined, except impliedly settled by the order of the circuit court in overruling the motion to quash.

Such is the face of the record presented to us upon the petition for a writ of prohibition. If this court should take the allegations, as set forth in the complaint,

alleging residence in Arkansas, and the motion to quash, as alleging the residence of the same party in Tennessee, and we then assume to try that issue of fact to determine the jurisdiction of the original cause, our action would be, to that extent, a usurpation of the function of the trial court.

Justice Hughes, as early as 1892, upon application for a writ of prohibition, wherein the petitioner had alleged the fact that it could not be held to answer in a suit for liability in this State, said in regard to the questions therein raised: "They must be first tried by the circuit court upon the pleadings and the evidence. This corporation says, for instance, that it is not guilty of publishing the libel charged, and, therefore, denies its liability to suit in courts of this State. This may be pleaded in bar, and given in evidence, and, if true, will defeat the plaintiff's claim. It cannot, therefore, be properly a subject of plea to the jurisdiction. In this controversy we must take the plaintiff's cause of action to be such as he alleged it to be in his complaint, otherwise we shall be trying the merits of the controversy for the purpose of determining whether we have power to try them. *Nat. Condensed Milk Co.* v. *Brandenburgh,* 40 N. J. L. 112. The truth of the allegations of the complaint, as well as the sufficiency of them to constitute a cause of action, are not questions now before this court." *American Casualty Co.* v. *Lea,* 56 Ark. 511, 515, 20 S. W. 416.

This cause of action is transitory. If the facts are as they are alleged in the complaint, the action can be tried in the circuit court, where filed. *Scottish Union & Nat. Ins. Co.* v. *Hutchins,* 188 Ark. 533, 66 S. W. (2d) 616. In that case, the petitioner sought to try the question of residence of Bruce, the plaintiff, who filed the suit against the petitioner, and the court distinguished the case, upon the hearing of the petition for prohibition, from the case of *National Liberty Ins. Co.* v. *Trattner,* 173 Ark. 480, 292 S. W. 677.

In *Merchants' & Planters' Bank* v. *Hammock,* 178 Ark. 746, 751, 12 S. W. (2d) 421, this court said: "The office of the writ of prohibition is to restrain an inferior

tribunal from proceeding in a matter not within its jurisdiction; but it is never granted unless the inferior tribunal has clearly exceeded its authority, and the party applying for it has no other protection against the wrong that shall be done by such usurpation. *Order of Ry. Conductors of America* v. *Bandy*, 177 Ark. 694, 8 S. W. (2d) 448, and cases cited.''

In the Bandy case, the court said: ''Where the court has jurisdiction over the subject-matter, and the question of its jurisdiction of the person turns upon some fact to be determined by the court, its decision that it has jurisdiction, if wrong, is an error, and prohibition is not the proper remedy.''

Again Justice WOOD announces the rule in this way: ''If the existence or nonexistence of jurisdiction depends on contested facts which the inferior tribunal is competent to inquire into and determine, a prohibition will not be granted; though the superior court should be of opinion that the questions of fact have been wrongly determined by the court below, and, if rightly determined, would have ousted the jurisdiction.'' *Findley* v. *Moose*, 74 Ark. 217, 220, 85 S. W. 238.

We feel that the foregoing cases announce the rule followed by this court, and that, while other cases in point could be cited, such citations are not necessary.

The writ of prohibition is denied.