KINDRICK, CURATOR *v.* CAPPS.

4-5256

Opinion delivered November 21, 1938.

M. A. *Matlock* and *June P. Wooten,* for appellant.

*Bert B. Larey; Shaver, Shaver & Williams, J. S. At-kinson, Fred E. Greer, Arnold & Arnold, A. L. Burford, H. M. Barney* and *Frank S. Quinn,* for appellee.

GRIFFIN SMITH, C. J. Appellants seek to have a decree of the Miller chancery court set aside insofar as it affects a one-fifty-fourth interest in 227.25 acres of land. The property was formerly owned by Edward Terry, who died leaving six children, one of whom was Cynthia Rebecca Parker. Mrs. Parker left nine heirs, including a daughter who is now Smythie Parker Kindrick, one of the appellants herein.

In a Miller chancery cause entitled *Calvin A. Terry et al.* v. *Mrs. Eva Rives et al.,* the lands in question were sold in 1917, the court having sustained allegations of the complaint for partition that the acreage was not susceptible of division in kind. Mrs. Kindrick was one of the defendants, and her address was given as Myrtis, Louisiana. The decree recites appointment of an attorney *ad litem* for the non-resident defendants; publication of a warning order; report of the attorney *ad litem* showing that all non-resident defendants had been duly notified, and the certificate of such attorney that no matters of defense had been communicated to him.

The instant suit was brought by Elbert Kindrick, curator, and A. E. Parker, under-curator, for Smythie Parker Kindrick, an incompetent; and by B. A. Skipper,

the latter acting for himself. Due to oil activities, the land has increased in value.

With respect to the 1917 decree, it is alleged that the sale thereunder was void as to Mrs. Kindrick because she was insane; that she was joined as a non-resident defendant without the fact of her incompetency having been brought to the attention of the court; that the attempted service through publication and notice from the attorney *ad litem* were ineffective, and that these defects deprived the court of jurisdiction.

Evidence in behalf of appellants was to the effect that Mrs. Kindrick was confined to the state hospital for insane at Pineville, Louisiana, from December 24, 1913, until May of the following year, at which time she was discharged. Other similar commitments were in 1928 and 1931. In 1936 Mrs. Kindrick was again committed, but on this occasion there was a judgment of insanity by a proceeding known to the Louisiana law as an interdiction; and at the time this cause was heard she was a ward of the state.

From May, 1914, until 1928, Mrs. Kindrick was at liberty. During that period she bore two children. Relatives and neighbors testified to her unusual behavior, some expressing the opinion that she was not normal, and was not competent to attend to business matters. Witnesses for appellees, while not stressing Mrs. Kindrick's constant sanity, gave evidence as to rational intervals. These witnesses were inclined to regard her more as a religious fanatic than as one bereft of reason.

It is urged by appellees that a decree of foreclosure in 1924 and a decree of confirmation in 1928, involving a part of the land, cured any defects that may have resulted from the sale and confirmation of 1917.

In defense of the decree of 1917 appellees say (1) that the present suit is a collateral attack, and as such is not maintainable; (2) that if a direct attack has been attempted, it must fail because appellants did not comply with statutory requirements; (3) that a foreign guardian or curator has no extra-territorial authority, and therefore such representative appointed in Louisiana cannot sue in Arkansas; (4) that the commitment of

Mrs. Kindrick in 1913 was not an adjudication of insanity and gave no notice of such; (5) that there was no formal adjudication of insanity until 1936, and (6) even though Mrs. Kindrick was insane she could sue and be sued.

Appellants' suit is a collateral attack. There was nothing before the court in 1917 to indicate that Mrs. Kindrick was insane. *Taylor et al.* v. *King*, 135 Ark. 43, 204 S. W. 614; *Crittenden Lumber Co.* v. *Mc-Dougal*, 101 Ark. 390, 142 S. W. 836; *Love* v. *Kaufman*, 72 Ark. 265, 80 S. W. 884; *McDonald* v. *Fort Smith & Western Railroad Co.*, 105 Ark. 5, 150 S. W. 135.

In the McDonald case it was said: "A judgment pronounced against one without notice is void; and § 4424 of Kirby's Digest is a statutory declaration of that principle. But in all cases seeking to impeach a judgment for want of notice the question involved is, what is the character of the evidence which is necessary to show such notice or want thereof? This question was fully and well considered by this court in the case of *Boyd* v. *Roane*, 49 Ark. 397 [5 S. W. 704]. It was there held that in the case of a domestic judgment collaterally attacked, 'the question of notice or no notice must be tried by the court upon an inspection of the record only.' This ruling has been adhered to so often that the doctrine thus laid down can be considered settled in this state. The judgment of a domestic court having general and superior jurisdiction is presumed regular and valid, and founded upon jurisdiction properly acquired. Our statute provides that when it appears from the recital in the record of the court that notice has been given it shall be evidence of such fact (Kirby's Digest, § 4425) and in the case of *Love* v. *Kaufman* [*supra*] it was held that when a judgment recited that the defendants 'were duly served with summons herein as required by law,' it must be taken as true unless there is something in the record to contradict it." See cases cited.

The opinion in the McDonald case contained this additional declaration of the law: "The judgment in the condemnation suit which plaintiff seeks in this case to impeach recites that process was duly and regularly

served on said Ella Hare, who was made a party defendant in this suit. This recital is conclusive evidence upon collateral attack of this judgment that Ella Hare, whether *sui juris* or laboring under disability, was served with process in the manner prescribed by law.''

These pronouncements, and holdings of similar purport to be found in many of our cases, are conclusive of the proposition that a final judgment or decree of a court having jurisdiction of the subject-matter is invulnerable to collateral attack if such judgment or decree contains a finding that those things necessary to give jurisdiction of the person or the *res* were done.

Appellants insist that their attack is not collateral, but direct; that the decree of 1917, being void, was in fact no decree insofar as Mrs. Kindrick is concerned. The procedure for vacating or modifying judgments, decrees, or final orders after lapse of the term appears as §§ 8246 to 8252, and § 1541, of Pope's Digest. The fifth subdivision of § 8246 affords relief from ''erroneous proceedings against . . . a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings.'' There is the additional recourse to bill of review under the chancery practice. *Ingram* v. *Raiford,* 174 Ark. 1127, 298 S. W. 507. Although the sections referred to are available in proper cases, § 8249 imposes the condition that a judgment shall not be vacated ''until it is adjudged that there is a valid defense to the action in which the judgment is rendered.'' It has been held, however, that the grounds to vacate are to be tried before it is necessary to establish validity of the defense. *Ryan* v. *Fielder,* 99 Ark. 374, 138 S. W. 973. Appellants have not alleged a meritorious defense. The complaint reads: ''The lands were sold pursuant to an order of the court in 1917, and the proceeds [$1,500] divided among certain of the parties.''

There is nothing in the record, or in the complaint as abstracted by appellants, to indicate that if Mrs. Kindrick had been present when the sale was consummated, in possession of her normal faculties, a result different

from that confirmed by the chancellor could have been realized.

 It is not necessary to determine whether the Louisiana guardian or curator had authority to sue in Arkansas. We have a statute, § 1309, Pope's Digest, authorizing administrators and executors appointed in any of the states to sue in the courts of this state in their representative capacity, "to the same and like effect as if such administrators and executors had been qualified under the laws of this state." This section does not mention guardians or curators. [But see § 6293, Pope's Digest.]

 Mrs. Kindrick was discharged or dismissed from the Pineville hospital in 1914. Appellants argue that where a person has been adjudged insane, a presumption follows that the condition or status continues until there has been an adjudication or finding to the contrary. Appellees insist that there was no finding of insanity until 1936. Appellees also insist that through witnesses who testified in their behalf they established, as a matter of fact, that Mrs. Kindrick was not insane from 1914 until 1936, while appellants are just as insistent that a preponderance of the evidence shows that Mrs. Kindrick was insane when incarcerated; that she was not sane when released, nor was she sane from 1914 until 1917, or thereafter.

It is our view that appellants are not sustained in this contention. Approximately twenty years elapsed between the date of the patient's release and the time witnesses gave their testimony. It was not until 1928 that steps were taken to reconfine Mrs. Kindrick. The chancellor made no specific finding of sanity or insanity, but it will be presumed, in view of the decree, that he found she was sane in 1917. One of her children was born in 1915 and another in 1919, and she reared both of them.

It is next urged by appellees that the proceedings in Louisiana prior to 1936 were not sufficient to constitute notice of Mrs. Kindrick's alleged insanity.

In *Vance* v. *Ellerbo,* 150 La. 388, 90 So. 735, a headnote is: "Where a defendant in partition proceed-

ings was insane, but not interdicted, and the citation of such defendant was valid on its face, a judgment rendered in the proceeding was voidable, but not void." Another note to the same case reads: "A judgment in partition will not be annulled for the reason that one of the defendants was insane, unless the other parties to the judgment are before the court." And again: "A citation against an insane person not interdicted, which is regular in form, and bears the return of a legal domiciliary service made at the home of the defendant, *held* valid, notwithstanding that defendant was in an asylum elsewhere, since, if he had no capacity, he could not acquire a new domicile. . . ."

The law of Louisiana provides two distinct methods of dealing with persons of unsound mind: (1) Commitment, which is a proceeding for restraining and confining insane persons for their own and the public's safety. This proceeding is *ex parte,* and is in the name of the state. (2) Interdiction. In distinguishing the two proceedings the Louisiana Supreme Court has said that the first is informal and need not be set aside when the patient recovers, while the latter is highly formal and requires all the solemnity of contested judicial proceedings, including a formal judgment to restore civil rights after the mental derangement has ended.

In *Oliver et ux.* v. *Terrall,* 152 La. 662, 94 So. 152, a headnote reads: "A summary commitment to an insane asylum is a mere matter of police [regulation], and not an interdiction. . . . It produces none of the civil effects of such interdiction, and need not be revoked when the person is discharged on recovering his sanity."

It would seem that, in Louisiana, when Mrs. Kindrick was released from the state hospital in May, 1914 —nearly two years before the chancery proceedings in Miller county, Arkansas, were had—the discharge "was all that was necessary to remove her disabilities"; and she was in position to sue and be sued.

The Louisiana Supreme Court further said that if, in such cases, illegal restraint should be exercised against a person whose sanity had been restored, but who had

not been interdicted, *habeas corpus* would be the proper remedy.

In *Missouri State Life Insurance Company* v. *Holt*, 186 Ark. 672, 55 S. W. 2d 788, we quoted with approval from *Peters* v. *Townsend*, 93 Ark. 103, 124 S. W. 255, the following: "An insane person not under guardianship can sue and be sued the same as a sane person, and the foregoing provision of the Constitution [art. 7, § 34] does not exclude the jurisdiction of other courts to hear and determine suits by or against insane persons whether under guardianship or not. . . ."

*Equitable Life Assurance Society* v. *Mann*, 189 Ark. 751, 75 S. W. 2d 232, is another case in point. In the opinion it is said: "It is urged forcefully that, since [Robert E. Mattison] was adjudicated to be insane in 1929, the presumption of insanity continues and particularly by reason of the fact that he has returned, and was at the time of the filing of this suit, and is yet, an inmate of [the Western State Hospital at Bolivar, Tennessee]. However, he was paroled the last time in September of 1933, and the effect of such parole is such as to raise another presumption of restored sanity."

From the decisions and statutes cited, it follows that when Mrs. Kindrick was released from the asylum in 1914, there arose a presumption, both in Louisiana and Arkansas, that her sanity had been restored; and certainly this presumption attached in 1917 when the partition suit was heard. At that time Mrs. Kindrick was subject to the regular processes of the law. In the absence of any showing of fraudulent concealment of an adverse mental condition which might have existed in spite of the presumption of sanity attending release, the court acquired jurisdiction in the manner set out in the decree.

Affirmed.